## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHANNES CLAUS, an individual ) | **Docket No. 22-35292** |
| ) | |
| Plaintiff-Appellant, ) | |
| ) | |
| -vs- ) | |
| ) | |
| CANYON COUNTY, IDAHO, a ) | |
| political subdivision of the State of ) | |
| Idaho, ) | |
| ) | |
| Defendant-Appellee. ) | |
| ) | |

### APPELLANTS' OPENING BRIEF

Appeal from the United States District Court for the District of Idaho, Boise
District Court Case No. 1:19-cv-00197-REP

The Honorable Raymond E. Patricco Presiding

Eric S. Rossman, ISB #4573
Erica S. Phillips, ISB #6009
ROSSMAN LAW GROUP, PLLC
350 N. 9th Street, Suite 500
Boise, Idaho 83702
Telephone: (208) 331-2030
Facsimile: (208) 947-2424
erossman@rossmanlaw.com
ephillips@rossmanlaw.com

Matthew G. Gunn, ISB #8763
LAW OFFICES OF MATTHEW G. GUNN
702 West Idaho Street, Suite 1100

Boise, ID 83702
Telephone: (208) 472-8834
matt@lawmgg.com
*Counsel for Plaintiff/Appellant*

# TABLE OF CONTENTS

TABLE OF CASES AND AUTHORITIES.................................................. 1

JURISDICTIONAL STATEMENT. ...................................................... 4

    A.    Statement of District Court Jurisdiction.................................... 4

    B.    Statement of Appellate Court Jurisdiction ................................ 4

    C.    Statement of Timeliness of Appeal .......................................... 4

ISSUE PRESENTED FOR REVIEW ............................................... 5

STATEMENT OF THE CASE........................................................ 5

    A.    Mr. Claus' Hire, Salary, and Protected Activity........................ 6

    B.    Mr. James and Mr. Bazzoli Retaliate Against Mr. Claus .......... 8

    C.    The Amended Witness List Filing .......................................... 11

    D.    Canyon County Terminates Mr. Claus' Employment ............. 15

STANDARD OF REVIEW ......................................................... 18

ARGUMENT       ..................................................................... 20

    A.    The Minimal Burden of Proof on Summary Judgment
          To Employment Discrimination Claims under Ninth
          Circuit Law....................................................................... 20

ii

B.     Prima Facie Claims under USERRA ..................................... 21

C.     The District Court Erred in Granting Summary Judgment in Favor of Canyon County Because Extensive Disputes of Material Fact Exist ................................................................. 25

    1.     The District Court Erred in Ruling as a Matter of Law what Canyon County's Motivations were in Terminating Mr. Claus' Employment............................ 28

        a.  The District Court Impermissibly Weighed Evidence, made Credibility Determinations, and Drew Inferences in Favor of the Moving Party Canyon County ................................................... 28

        b.  There are Extensive Facts Upon Which the Jury Could Conclude that Canyon County Retaliated Against Mr. Claus on the Basis of his Protected Activity ........................................... 30

    2.     The District Court Erred in Ruling as a Matter of Law that Mr. Claus' Employment was Terminated for a Non-Discriminatory Reason ................................. 36

        a.  The District Court Impermissibly Weighed Evidence, made Credibility Determinations, and Drew Inferences in Favor of the Moving Party Canyon County ................................................... 36

CONCLUSION ......................................................................... 39

STATEMENT OF RELATED CASES ....................................... 41

CERTIFICATE OF COMPLIANCE ......................................... 42

CERTIFICATE OF SERVICE ................................................... 43

iii

TABLE OF CASES AND AUTHORITIES

*Chuang v. Univ. of Cal. Davis, Bd. of Trs*., 225 F.3d 1115, 1124
(9th Cir. 2000)............................................................................ 21

*Erickson v. U.S. Postal Serv*., 571 F.3d 1364, 1368 (Fed. Cir. 2009)..... 23

*Espinoza v. City of Seattle*, 458 F. Supp. 3d 1254, 1259
(W.D. Wash. 2020) .................................................................... 24

*Gummo v. Vill. of Depew*, 75 F.3d 98, 105 (2d Cir. 1996)..................... 21

*Hill v. Michelin N. Am., Inc*., 252 F.3d 307, 311 (4th Cir. 2001)........... 21

*Huhmann v. Fed. Express Corp*., 874 F.3d 1102, 1105 (9th Cir.
2017) ................................................................................... 21, 24

*Lam v. University of Hawaii*, 40 F.3d 1551, 1563 (9th Cir.
1994) ...........................................................................21, 30, 38-39

*Leisek v. Brightwood Corp*., 278 F.3d 895, 898 (9th Cir. 2002)............. 23

*Monroe v. Standard Oil Co*., 452 U.S. 549, 559 (1981) ........................ 23

*Moore v. Local Union 539*, 989 F.2d 1534 (9th Cir. 1993)............... 19, 26

*Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009) ................... 19

*Nissan v. Fritz Companies, Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000) .. 19

*Poller v. Columbia Broadcasting System, Inc*., 368 U.S. 464, 473
(1962) ....................................................................................... 19

*San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys*.,
568 F.3d 725, 733 (9th Cir. 2009) ............................................... 20

*Schnidrig v. Columbia Mach., Inc*., 80 F.3d 1406, 1410 (9th Cir.
1996) ....................................................................................... 20

*SEC v. Koracorp Indus., Inc*., 575 F.2d 692, 699 (9th Cir. 1978)........... 19

1

*Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1012 (Fed. Cir. 2001) ................................................................................22-23

*Tremain v. Bell Industries*, 196 F.3d 970 (9th Cir. 1999) ...................... 18

*United States v. Perry*, 431 F.2d 1020, 1022 (9th Cir. 1970)................. 19

*Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc*., 473 F.3d 11, 17 (1st Cir. 2007)....................................................... 24

*Wallace v. City of San Diego, 479 F.3d 616, 624* (9th Cir. 2007) ............. ................................................................................21-24, 28, 38

*Wallis v. J.R. Simplot Co*., 26 F.3d 885, 889 (9th Cir. 1994) ...................................................................20, 30, 38-39

*Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008) ......................... 19

Other Authorities:

10 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE
§ 2726 (1973) ................................................................. 19

28 U.S.C. § 1291 ............................................................... 4

28 U.S.C. § 1331 ............................................................... 4

28 U.S.C. § 1367 ............................................................... 4

38 U.S.C. § 4301(a)(3) ...................................................... 21

38 U.S.C. § 4303(2) .......................................................... 22

38 U.S.C. § 4311(a) .......................................................... 22

38 U.S.C. § 4311(b) ..................................................... 25, 27

38 U.S.C. § 4311(c)(1) ...................................................... 22

Federal Rule of Appellate Procedure 4(a)(1)(A) ...................... 5

Federal Rule of Civil Procedure 56 ..................................... 18

Idaho Code § 18-3203 .................................................. 16, 34

Idaho Rules of Professional Conduct ................................... 33

Idaho Rules of Professional Conduct 8.3 ......................... 17, 34

Idaho Rules of Professional Conduct 8.4(c) ..................... 16, 34

Uniformed Services Employment and Reemployment Rights
Act of 1994 ("USERRA") ................... 4-5, 8, 21-25, 26-28, 30-31, 36-39

Vietnam Era Veterans' Readjustment Assistance Act of 1974 ............... 23

# JURISDICTIONAL STATEMENT

### A.    *Statement of District Court Jurisdiction.*

Plaintiff Johannes Claus filed this lawsuit in the United States District Court for the District of Idaho based on the federal court's original jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.  Jurisdiction under 28 U.S.C. § 1331 is appropriate as this case was brought under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") for money damages for loss of income caused by the termination of Mr. Claus's employment by Canyon County. 8-ER-001647-001656.  Supplemental jurisdiction is appropriate in this case for Plaintiff's common law emotional distress claim, arising from the same set of facts and circumstances as the USERRA claim. 8-ER-001647-001656.

### B.    *Statement of Appellate Court Jurisdiction.*

On March 15, 2022, the District Court entered a Memorandum Decision and Order granting Canyon County's motion for summary judgment. 1-ER-000004-000021. The District Court entered judgment that same day. 1-ER-000003.  Mr. Claus filed his Notice of Appeal on April 8, 2022.  This Court thus has jurisdiction pursuant to 28 U.S.C. § 1291 as this is an appeal from a final judgment of the District Court.

### C.    *Statement of Timeliness of Appeal.*

4

Mr. Claus's appeal is timely filed pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A). The judgment in favor of Canyon County with regards to Mr. Claus's claims was entered on March 15, 2022. 1-ER-000003. Pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A), a notice of appeal must be filed with the district court clerk within 30 days after entry of the judgment being appealed. The Notice of Appeal was filed on April 8, 2022, and is therefore timely.

## ISSUE PRESENTED FOR REVIEW

1. Did the District Court err in granting Canyon County's Motion for Summary Judgment despite evidence upon which a jury could conclude Mr. Claus's employment was terminated due to his military service, in violation of the USERRA?

## STATEMENT OF THE CASE

This case arises from the unlawful, military service-based discrimination and retaliation suffered by Mr. Claus in the form of the termination of his employment by Canyon County.

On May 30, 2019, Mr. Claus filed a Complaint alleging (1) Canyon County discriminated against him based on his military service in violation of USERRA, and (2) inflicted emotional distress upon him. On December 18, 2020, Cymer filed

a Motion for Summary Judgment asserting that it was entitled to judgment in its favor as a matter of law with regards to Mr. Claus's claims.

After briefing and oral argument, the District Court entered an order granting Canyon County's motion on March 15, 2022. 8-ER-001647-001656. On that same date, the District Court entered judgment in favor of Canyon County. 1-ER-000003.

## STATEMENT OF FACTS

### A.  *Mr. Claus's Hire, Salary, and Protected Activity.*

Canyon County hired Mr. Claus in October of 2016 and terminated his employment in August of 2018. 1-ER-000004. Specifically, Mr. Claus was hired as an at-will Public Defender II, at an annual salary of $61,296.00. 1-ER-000005. Mr. Claus identified himself as a military veteran during the application process with Canyon County. 1-ER-000005.

Beginning with the 2018 Fiscal Year (October 1, 2017-September 30, 2018), the Canyon County Public Defender's Office moved to a system whereby an individual public defender's salary would be determined by years of service. 1-ER-000005. Mr. Claus first passed the bar in 2014, giving him thirteen years' experience as an attorney as of 2017. 1-ER-000005. Canyon County, however, refused to credit seven years of Mr. Claus's legal experience which he spent as a Judge Advocate General in the United States Army, including deployments to Iraq.

1-ER-000005-000006. Mr. Claus performed some criminal legal work during his military JAG service. 5-ER-000730-000734 (15:5-19:8); 5-ER-000736-000739 (21:1-24:3). Mr. Claus's six years' experiential credit gained him a raise to $67,156.00 in annual salary, but the raise would have been much larger had his seven years of JAG experience been credited by Canyon County. 1-ER-000005-000006.

Canyon County claimed during the underlying litigation that seven other attorneys, aside from Mr. Claus, had their years of experience downgraded pursuant to the new salary system. 1-ER-000006. Mr. Claus, however, testified that, in a meeting of the entire public defender's office in the fall of 2017, Mr. Bazzoli singled out Mr. Claus as the only attorney in the office who was not being paid for all years of experience since passing the bar. 5-ER-000793 (78:6-22).

Aaron Bazzoli became the Canyon County Public Defender in October of 2017, just as the new salary system was being implemented. 1-ER-000006. Prior to Mr. Bazzoli formally taking office, Mr. Claus met with him and raised his concerns regarding the discounting of his JAG service time salary calculations. 1-ER-000006. Mr. Bazzoli indicated he would look into the matter further once he formally took office. 1-ER-000006.

In December of 2017, Mr. Bazzoli hired Jesse James to serve as Chief Deputy Public Defender. 1-ER-000006. On or about December 12, Mr. Claus met

with Mr. Bazzoli and Mr. James to discuss his compensation concerns. 1-ER-000006. Mr. Claus reiterated his concerns regarding the discounting of his JAG service time for salary calculation purposes. 1-ER-000006. Mr. Claus stated he felt such salary calculation constituted discrimination against him based on his military service and veteran status, and he provided written information regarding USERRA to Mr. Bazzoli and Mr. James. 1-ER-000006. Mr. Claus believed Mr. Bazzoli and Mr. James were highly dismissive of his salary and military-based discrimination concerns. 1-ER-000006.

Ultimately, Mr. Bazzoli adjusted Mr. Claus's salary upwards to reflect thirteen years of service, and Mr. Claus was made whole in back pay to the date of implementation of the new salary system. 1-ER-000006-000007.

### B. *Mr. James and Mr. Bazzoli Retaliate Against Mr. Claus*.

Mr. Claus suffered extensive retaliation after he reported to Mr. Bazzoli and Mr. James that he was being discriminated against on the basis of his status as a military veteran and his military service. Mr. Bazzoli and Mr. James would constantly make belittling remarks to Mr. Claus about him being a "fourteen-year attorney." 5-ER-000828-000830 (113:6-114:16; 114:7-115:7). The majority of the fourteen years of experience referenced by Mr. Bazzoli and Mr. James was made up of Mr. Claus's service as a Judge Advocate General in the United States Air Force. 5-ER-000730-000740 (15:5-25:16). Mr. James could not recite the years of

8

service of all the attorneys in the office, but Mr. Claus's fourteen years' service was memorable to him. 6-ER-001298 (32:2-24).

After Mr. Claus complained that Canyon County was discriminating against him based on his years of military service, Mr. Bazzoli and Mr. James began to single Mr. Claus out based on minor offenses, offenses that other attorneys in the office were not singled out for. 5-ER-000813-000817 (98:25-102:3). Mr. James told Mr. Claus that he could be fired for using his laptop on the edge of a paralegal's desk; Mr. Claus felt his job was threatened. 5-ER-000813-000817 (98:25-102:3). Mr. James told Mr. Claus that he could be fired for not clearing his email inbox quickly enough. 5-ER-000817-000818 (102:4-103:22). Mr. Claus was singled out for being late to Court, but this was a common occurrence for all public defenders given the heavy caseloads and numerous hearings they were managing. 5-ER-000819-000821 (104:19-106:23); 5-ER-000822-000824 (107:23-109:11).

Mr. Claus won a Rule 29 "half-time" motion and when discussed in front of other attorneys, Mr. Bazzoli did not congratulate Mr. Claus at all, rather Mr. Bazzoli dismissed Mr. Claus's success by stating that Mr. Claus's victory didn't count as a jury verdict. 5-ER-000825-000826 (110:11-111:1). Similarly, Mr. Claus successfully appealed a magistrate ruling to the district court and when the case was discussed in front of other attorneys Mr. James did not congratulate Mr. Claus; Mr. James said that "set 'em free McKee threw you a bone." 5-ER-000826 (111:2-

22); 7-ER-001333-001334 (63:1-64:15). Mr. Claus also won a child protection trial, preventing the State from terminating a parent's rights, and Mr. Bazzoli and Mr. James did not say a word in praise. 5-ER-000826-000828 (111:23-113:5).

Mr. Claus was also involuntarily transferred after he complained that Canyon County was discriminating against him based on his years of military service. Mr. Claus performed exemplary work on Judge DeMeyer's misdemeanor criminal docket and got more dismissals than any other attorney in the office. 5-ER-000758-000759 (43:7-44:22). Yet, in March of 2018, shortly after his salary was adjusted upwards based on his complaints that Canyon County was discriminating against him based on his years of military service, Mr. Claus was transferred off his criminal assignment to a child protection docket assignment. 5-ER-000760-000761 (45:4-46:7); 6-ER-001066 (110:5-14). Mr. Claus was given no reason for his transfer to the child protection docket. 5-ER-000905 (190:2-11). Mr. Claus was not asked if he wanted to move to the child protection docket. 6-ER-001302 (34:7-14). Mr. Claus had never done child protection work before. 5-ER-000761-000762 (46:8-47:22.) No one else in the office was asked if they were interested in going to the child protection docket. 7-ER-001317 (47:3-23.) Most attorneys in the Canyon County public defender's office never worked the child protection docket. 5-ER-000902 (187:15-19.) In Mr. Claus's experience at both the Twin Falls County and Canyon County public defender's offices, a misdemeanor

criminal assignment was the stepping-stone to a felony criminal assignment, which was the stepping-stone to a judgeship. 5-ER-000763-000765 (48:2-50:11). Mr. Claus worried that he was being sidelined, that his path to a felony team was being harmed. 5-ER-000760-000761 (45:4-46:7).

Another public defender, Mary Gigray, was moved from the child protection docket to Mr. Claus's misdemeanor criminal docket, and she was promoted to felony work shortly thereafter. 5-ER-000810-000813 (95:20-98:3). Mr. James did not ask Mr. Claus if he was interested in the felony position to which Ms. Gigray was promoted, nor did he ask Mr. Bazzoli to consider Mr. Claus for the felony position. 7-ER-001319-001320 (49:1-50:4). Ms. Gigray had ten years' experience when she was promoted to a felony team. 7-ER-001317-001318 (47:24-48:16). Attorneys with comparable experience to Mr. Claus were beginning to receive promotions to felony teams when Mr. Claus was moved to the child protection docket. 5-ER-000813 (98:4-14).

### C. *The Amended Witness List Filing.*

Mr. Claus had a deadline of Friday, July 20, 2018, to file a witness list in a termination of parental rights child protection case. 5-ER-000832 (117:8-11). The week prior to the filing deadline, Mr. Claus was working with the mother, his client, to prepare a list of witnesses who could attest to her ability to parent and provide for her children. 5-ER-000832 (117:12-17). Mr. Claus asked the mother to

11

have potential witnesses call him. 5-ER-000832 (117:18-19). On July 20, 2018, Mr. Claus had his legal assistant Christina Taillon timely file the witness list at 4:30 p.m. with the names of witnesses with whom he had spoken at that juncture. 5-ER-000832 (117:18-25).

Mr. Claus remained in the office past 5:00 p.m. preparing for a trial in another matter that was beginning on Monday. 5-ER-000833 (118:1-12). At around 5:30 p.m. Mr. Claus received calls from two further witnesses who indicated they wanted to testify on behalf of Mr. Claus's client. 5-ER-000833 (118:13-20). Mr. Claus knew the deadline for the witness list was that day July 20, 2018, and he wanted to include these two witnesses on the witness list. 5-ER-000833 (118:21-25). Mr. Claus amended the witness list that had earlier been filed by Ms. Taillon, but then he didn't know how to file it because Canyon County had no policy in place for after-hours filing and Mr. Claus never received training from Canyon County regarding how to e-file documents with the Court. 5-ER-000834 (119:1-5); 7-ER-001344-001345 (74:15-75:2); 6-ER-001142-001143 (186:17-187:3). Mr. Claus had no access to Odyssey to e-file as he had never been given an Odyssey username and password by Canyon County. 5-ER-000835 (120:8-12). Furthermore, Ms. Taillon had made it clear to Mr. Claus that she would not accept any phone calls or requests for work after 5:00 p.m., so he did not call her. 5-ER-000834 (119:6-10). Mr. Claus had no way to contact the prosecuting attorney on

the case after hours. 5-ER-000907-000908 (192:23-193:4). Mr. Claus was highly concerned because the witnesses were essential and the stakes enormous; if his client lost the trial, she would lose all parental rights to her children and would never have the legal right to contact them again. 5-ER-000834 (119:11-25).

Thus, Mr. Claus emailed the witness list to Ashley Gianuzzi[1], a friend of his who is a paralegal. 5-ER-000835 (120:13-17). Ms. Gianuzzi had a year of experience as a paralegal and understands client confidentiality. 7-ER-001480-001481 (18:24-19:1); 7-ER-001503-001504 (41:24-42:6). Ms. Gianuzzi had engaged in online Odyssey training. 7-ER-001514-001515 (52:23-53:6). Mr. Claus did not provide Ms. Gianuzzi any information regarding the case that was not filed with the Court and viewable by the Court and opposing counsel. 5-ER-000908-000909 (193:16-194:1). Mr. Claus did not provide Ms. Gianuzzi any direction regarding the certificate of service signed by Ms. Taillon which remained attached to the amended witness list from Ms. Taillon's initial filing thereof; he assumed Ms. Gianuzzi would change the certificate of service as she was the one who would be filing it. 5-ER-000835-000836 (120:23-121:2); 5-ER-000841-000842 (126:22-127:2).

---

[1] Ms. Gianuzzi's name was Ashley Wilson in 2018; it was Ashley Gianuzzi by the time she was deposed in this matter.

Ms. Gianuzzi filed the amended witness list under her own name, as reflected in the notification of service which states "Filed By: Ashley [Gianuzzi]." 7-ER-001533-001534. Ms. Gianuzzi made no changes to the witness list. 7-ER-001493 (31:19-25). Ms. Gianuzzi didn't even open the witness list sent her by Mr. Claus as she assumed it was file-ready and the contents thereof were not her business. 7-ER-001493 (31:9-12); 7-ER-001515-001517 (53:25-54:8). Ms. Gianuzzi did not think about the certificate of service. 7-ER-001494-001495 (32:22-33:4). In hindsight, Ms. Gianuzzi would have changed the certificate of service, but her failure to do so was an oversight with no ill intent; Ms. Gianuzzi was not attempting to hide the fact that she filed the amended witness list as she used her username and password to do so, meaning her name was on the filing. 7-ER-001495 (33:7-23); 7-ER-001516 (54:9-20); 7-ER-001533-001534. Ms. Gianuzzi deleted the amended witness list from her computer after filing it and never shared it with anyone else. 7-ER-001507 (45:5-23); 7-ER-001516 (54:21-23).

Mr. Claus's goal in sending the amended witness list to Ms. Gianuzzi for filing was to zealously represent his client and give his client the greatest chance of prevailing in the termination of parental rights trial and not avoid losing the legal right to parent and contact her children. 5-ER-000836 (121:13-21); 5-ER-000845 (130:13-18); 5-ER-000912 (197:4-11). Mr. Claus's client was aware of the witness

14

list filing deadline; she entrusted him with the names and contact information of the witnesses she wanted to testify on her behalf and expected him to file the witness list in a timely manner, and Mr. Claus then made the decision as her attorney to entrust Ms. Gianuzzi to file the amended witness list. 5-ER-000836 (121:22-25); 5-ER-000843-000845 (128:20-130:5).

### D. *Canyon County Terminates Mr. Claus's Employment*.

Mr. Bazzoli placed Mr. Claus on administrative leave due to Ms. Wilson's filing of the amended witness list. 1-ER-000008. Neither Mr. Bazzoli nor Mr. James could articulate any specific prejudice to Mr. Claus's client that resulted from Ms. Gianuzzi's filing of the amended witness list. 7-ER-001379-001380 (109:20-110:3); 6-ER-001157-001162 (201:18-206:10). Neither Mr. Bazzoli nor Mr. James contacted Ms. Gianuzzi to investigate the witness list issue. 7-ER-001530 (¶ 7).

Indeed, Mark Fucile, an extensively experienced expert in legal ethics who regularly publishes legal ethics articles in the state bar journals for Idaho, Washington and Oregon, opined that Mr. Claus did not violate the Idaho Rules of Professional Conduct in asking Ms. Wilson to file the witness list: "From the perspective of legal ethics, Mr. Claus retained supervisory responsibility over Ms. Wilson's filing of the Amended Witness List even though she was not an employee of the Canyon County Public Defender's Office. Because Ms. Wilson was under

Mr. Claus's supervision as a matter of legal ethics, he maintained any duty of confidentiality relating to filing the Amended Witness List even though Ms. Wilson was not an employee of the Canyon County Public Defender's Office. Mr. Claus did not violate Idaho RPC 8.4(c) by having Ms. Wilson file the Amended Witness List." 2-ER-000121-000134; 2-ER-000200-000205; 2-ER-000206-000212.

Startlingly, Mr. Bazzoli and Mr. James took the further position that Mr. Claus's filing of the amended witness list, via Ms. Gianuzzi, with a certificate of service signed by Ms. Taillon, constituted a criminal felony because it violated Idaho Code § 18-3203 which prohibits the intentional filing of "false or forged" instruments. 7-ER-001351-001352 (81:22-82:4); 7-ER-001372 (102:3-16); 7-ER-001373-001374 (103:9-104:7); 7-ER-001435-001436 (165:23-166:1); 6-ER-001170 (214:15-21); 6-ER-001183-001186 (227:14-230:25); 6-ER-001220-001223 (264:24-267:25). Mr. James recommended to Mr. Bazzoli that Mr. Claus's employment be terminated because he didn't want someone working in the office "who has committed a violation of criminal law." 7-ER-001431-001433 (161:22-163:18).

Despite allegedly believing that Mr. Claus committed a felony involving "false or forged instruments," neither Mr. James nor Mr. Bazzoli filed a bar complaint against Mr. Claus. 7-ER-001391 (121:12-15); 6-ER-001210-001212

16

(254:10-256:13); 2-ER-000214-000215. Indeed, Mr. Fucile opines that Mr. Bazzoli and Mr. James, assuming they genuinely believed that Mr. Claus committed a felony, in no way satisfied their reporting obligations under Rule 8.3 of the Idaho Rules of Professional Conduct: "Here, if Mr. Bazzoli and Mr. James truly believed that Mr. Claus had committed the serious misconduct they allege, their responsibility under RPC 8.3(a) was to file a written grievance against Mr. Claus with the Idaho State Bar using procedures that are readily available and thoroughly explained on the ISB web site." 2-ER-000206-000212. Mr. Claus has no discipline record related to his employment at Canyon County. 2-ER-000214-000215.

Nonetheless, after a good faith hearing, Canyon County terminated Mr. Claus's employment on August 6, 2018. 1-ER-000008. Mr. James recommended Mr. Claus's termination because he didn't want someone working in the office "who has committed a violation of criminal law." 7-ER-001431-001433 (161:22-163:18). Mr. Claus's termination letter stated:

> A review of Canyon County records finds your termination is premised upon your actions in a termination matter where you violated court rules and professional standards by directing a document to be filed by someone other than our support staff and who is not employed or authorized to be filing documents on behalf of this office, and other issues previously brought to your attention, not upon any retaliation claims that were raised in 2017 and addressed to your satisfaction related to compensation.

1-ER-000008.

At the time his employment was terminated, Mr. Claus had no disciplinary record at Canyon County. Mr. Claus received coaching from Mr. James and Mr. Bazzoli, as did other attorneys, but this coaching was not documented. 6-ER-001302-001304 (34:15-36:4); 7-ER-001320-001323 (50:5-53:2); 7-ER-001330-001331 (60:2-61:7); 6-ER-001066-001074 (110:15-118:19); 5-ER-000819-000821 (104:19-106:23); 5-ER-000903-000905 (188:1-190:1). Mr. Bazzoli recognized that it is important to document any major disciplinary issues. 6-ER-001020 (64:21-25). Mr. Claus was never suspended or disciplined in writing during his tenure. 5-ER-000902 (187:20-25); 6-ER-001307 (39:10-20); 6-ER-001219 (263:7-11). Mr. Claus is the only public defender to be terminated by Mr. Bazzoli. 5-ER-000987 (33:15-22).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment only when "the pleadings, depositions, admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). However, if, when viewing the evidence in the light most favorable to the non-moving party, any genuine issues of material fact remain for trial, the motion for summary judgment must be denied. *Tremain v. Bell Industries*, 196 F.3d 970 (9th Cir. 1999). In making this determination, "[t]he court must not weigh

the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." *Moore v. Local Union 539*, 989 F.2d 1534 (9th Cir. 1993).

The court may not assess credibility on summary judgment. *Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009). "The courts have long recognized that summary judgment is singularly inappropriate where credibility is at issue. Only after an evidentiary hearing or a full trial can these credibility issues be appropriately resolved." *SEC v. Koracorp Indus., Inc*., 575 F.2d 692, 699 (9th Cir. 1978) (citing *Poller v. Columbia Broadcasting System, Inc*., 368 U.S. 464, 473 (1962); *United States v. Perry*, 431 F.2d 1020, 1022 (9th Cir. 1970); 10 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2726 (1973).

Additionally, as the "moving party without the ultimate burden of persuasion at trial … [Defendants have] both the initial burden of production and the ultimate burden of persuasion on [their] motion for summary judgment." *Nissan v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). As such, "if [Defendants] fail[] to carry [their] initial burden of production, the nonmoving party [*i.e.*, Plaintiff] has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id*. at 1102-03.

On appeal, this Court reviews *de novo* the district court's grant of summary judgment. *See Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). In reviewing

the district court's dismissal, the Court must view the evidence in the light most favorable to the non-moving party. *See San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.,* 568 F.3d 725, 733 (9th Cir. 2009).

## ARGUMENT

### A. *The Minimal Burden of Proof on Summary Judgment Applicable to Employment Discrimination Claims under Ninth Circuit Law.*

As a threshold matter, it bears repeating at the outset that the Ninth Circuit "has set a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc*., 80 F.3d 1406, 1410 (9th Cir. 1996). Indeed, the requisite degree of proof necessary to establish a prima facie case of discrimination on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co*., 26 F.3d 885, 889 (9th Cir. 1994).

At the summary judgment stage, a plaintiff need only offer evidence which "gives rise to an inference of unlawful discrimination." *Wallis*, 26 F.3d at 889 (citation omitted). This low burden for plaintiffs asserting discrimination claims makes sense given that discrimination claims rarely involve "smoking gun" documents admitting unlawful discrimination; rather such claims are often built on inference and circumstantial evidence best adjudged by a trier of fact upon a full and complete record.

The Ninth Circuit has explained that "[**w]e require very little evidence to survive summary judgment in a discrimination case**, because the ultimate question is one that can only be resolved through a searching inquiry-one that is most appropriately conducted by the factfinder, upon a full record." *Lam v. University of Hawaii*, 40 F.3d 1551, 1563 (9th Cir. 1994) (emphasis added). *See also Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000) ("[a]s a general matter, the plaintiff in an employment discrimination action need produce **very little evidence** in order to overcome an employer's motion for summary judgment." (emphasis added)).

### B.     Prima Facie *Claims under USERRA.*

USERRA is a remedial statute, enacted in 1994, which "prohibits discrimination against persons because of their service in the uniformed services." *Hill v. Michelin N. Am., Inc.,* 252 F.3d 307, 311 (4th Cir. 2001) (quoting 38 U.S.C. § 4301(a)(3)) (internal quotation marks omitted). Congress enacted USERRA to "clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions." *Gummo v. Vill. of Depew*, 75 F.3d 98, 105 (2d Cir. 1996). USERRA recognizes claims for both discrimination and retaliation. *See Huhmann v. Fed. Express Corp.*, 874 F.3d 1102, 1105 (9th Cir. 2017) (direct discrimination claims cognizable under USERRA); *Wallace v. City of*

*San Diego*, 479 F.3d 616, 624 (9th Cir. 2007) (retaliation claims cognizable under USERRA).

38 U.S.C. § 4311(a) provides the basis for USERRA claims. That section states:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a) (emphasis added). USERRA defines a "benefit of employment" to include "any advantage, profit, privilege, gain, status, account, or interest...that accrues by reason of an employment contract or agreement...and includes...bonuses." 38 U.S.C. § 4303(2).

A violation of USERRA occurs when a person's

> membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service.

38 U.S.C. § 4311(c)(1); *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1012 (Fed. Cir. 2001).

22

It should be noted that unlike other remedial employment statutes which utilize a more stringent "but for" test, USERRA requires only "motivating factor" causation. "By adopting this 'motivating factor' formulation, Congress amended USERRA's antecedent to replace the 'sole cause' standard mandated by the Supreme Court in *Monroe v. Standard Oil Co*., 452 U.S. 549, 559 (1981)." *Leisek v. Brightwood Corp*., 278 F.3d 895, 898 (9th Cir. 2002). In *Monroe*, the Supreme Court had "interpreted the Vietnam Era Veterans' Readjustment Assistance Act of 1974, USERRA's predecessor, to require that an employee's military status be the sole motivation for the employer's action." *Leisek*, 278 F.3d at 898. USERRA replaced the 'sole motivation' test with a more lenient standard that requires only that the employee's military status was 'a motivating factor' in the employer's action. *See Leisek*, 278 F.3d at 898, *Sheehan*, 240 F.3d at 1012-13.

USERRA discrimination claims are analyzed under a burden-shifting mechanism. *See Wallace*, 479 F.3d at 624; *Sheehan*, 240 F.3d at 1013. An employee who makes a discrimination claim under USERRA bears the initial burden of showing by a preponderance of the evidence that his or her military service was a substantial or motivating factor in the adverse employment action. *Erickson v. U.S. Postal Serv*., 571 F.3d 1364, 1368 (Fed. Cir. 2009); *Wallace*, 479 F.3d at 624. If the employee makes that *prima facie* showing, the employer can avoid liability by demonstrating, as an affirmative defense, that it would have

23

taken the same action without regard to the employee's military service. *Erickson*, 571 F.3d at 1368; *Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 17 (1st Cir. 2007).

> Under USERRA, discriminatory motivation on the part of the employer
>
>> may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Sheehan*, 240 F.3d at 1014.

Although the term "retaliation" is not used in USERRA, the gravamen of Section 4311 is to prohibit adverse employment action in retaliation for the exercise of rights under the USERRA. *Wallace*, 479 F.3d at 625, n.1. Therefore, "a retaliation claim requires an additional threshold showing that the employee exercised his or her USERRA rights," but other than that, "the burden-shifting framework for discrimination and retaliation claims under USERRA is identical." *Espinoza v. City of Seattle*, 458 F. Supp. 3d 1254, 1259 (W.D. Wash. 2020) (citing *Wallace*, 479 F.3d at 624; *Huhmann*, 874 F.3d at 1105). Protected activity includes (1) taking "an action to enforce a protection afforded any person" under the USERRA, (2) testifying or otherwise making "a statement in or in connection with

any proceeding" pertaining to the USERRA, (3) assisting or otherwise participating in an investigation under the USERRA, or (4) exercising a right provided for under the USERRA. 38 U.S.C. § 4311(b).

**C.    *The District Court Erred in Granting Summary Judgment in Favor of Canyon County Because Extensive Disputes of Material Fact Exist*.**

The District Court made two rulings as a matter of law that invade the province of the jury and go to the merits of the case, which is inappropriate at the summary judgment stage of proceedings and justify reversal and remand.

First, the District Court ruled as a matter of law what Canyon County's motivation was when it terminated Mr. Claus's employment: "USERRA Step One: Mr. Claus's Military Service Was Not a Substantial or Motivating Factor in Canyon County's Decision to Terminate his Employment." 1-ER-000011.

Second, the District Court ruled as a matter of law that "Canyon County Would Have Terminated Mr. Claus's Employment Even if He Had Never Served in the Military." 1-ER-000017.

Both these rulings, however, go to the merits of the case, and read like findings of fact and conclusions of law after a bench trial, not a summary judgment order assessing whether disputes of material fact exist to be decided by the jury. In reaching these rulings, the District Court repeatedly invaded the province of the jury by making fact and credibility determinations, deciding as a matter of law

what inferences or explanations of events are or are not plausible, deciding the motivations of various actors, and drawing inferences in favor of the moving party Canyon County. The District Court overstepped its obligation on summary judgment to view the evidence in the light most favorable to Mr. Claus, draw inferences in his favor, and simply decide whether disputes of fact to be resolved by the jury exist, without resolving such factual disputes.

It bears repeating that on summary judgment "[t]he court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." *Moore,* 989 F.2d at 1537. The District Court erred by doing precisely that which it cannot do, weighing the evidence and determining the truth of the matter. Reversal and remand is therefore appropriate.

As a threshold matter, it should be noted that the District Court seemed to find compelling Canyon County's evidence that employees other than Mr. Claus had non-military service years discounted for salary consideration purposes.

There are two problems with the District Court's reliance on this fact. First, there is a dispute of fact because Mr. Claus testified that, in a meeting of the entire public defender's office in the fall of 2017, Mr. Bazzoli singled out Mr. Claus as the only attorney in the office who was not being paid for all years of experience since passing the bar.

Second, it is undisputed that in December of 2017, Mr. Claus met with Mr. Bazzoli and Mr. James and expressed concerns regarding the discounting of his JAG service time for salary calculation purposes. Mr. Claus explicitly stated he felt such salary calculation constituted discrimination against him based on his military service and veteran status, and he provided written information regarding USERRA to Mr. Bazzoli and Mr. James. Mr. Claus believed Mr. Bazzoli and Mr. James were highly dismissive of his salary and military-based discrimination concerns.

Whether ultimately efficacious or not, Mr. Claus's explicit and undisputed report to Mr. Bazzoli and Mr. James that he believed he was suffering discrimination on the basis of his military service constitutes protected activity because Mr. Claus was attempting to enforce rights afforded him by USERRA. *See*, 38 U.S.C. § 4311(b).

Thus, the central question in this case is not whether Canyon County's salary regime was discriminatory. Indeed, Mr. Claus recognizes that, after he complained, Canyon County made him whole for all his years of JAG service from a salary perspective. Rather, the central question in this case is whether Canyon County discriminatorily retaliated against Mr. Claus after Mr. Claus undisputedly engaged in USERRA-protected activity in December of 2017 by explicitly reporting to Mr.

27

Bazzoli and Mr. James his belief that he was suffering military-based discrimination.

    1.    *The District Court Erred in Ruling as a Matter of Law what Canyon County's Motivations were in Terminating Mr. Claus's Employment.*

        a.    <u>The District Court Impermissibly Weighed Evidence, made Credibility Determinations, and Drew Inferences in Favor of the Moving Party Canyon County</u>.

The District Court first ruled as a matter of law that Canyon County was <u>not</u> motivated by Mr. Claus's military service when it terminated his employment. 1-ER-000011-000017. The District Court erred, however, because it is up to the jury to decide whether Canyon County was motivated by Mr. Claus's military service in terminating his employment. It should also be remembered that retaliation based on Mr. Claus's USERRA-protected activity is equally unlawful as "direct" discrimination based on military service. *See Wallace*, 479 F.3d at 624 (retaliation claims cognizable under USERRA).

In making this ruling, the District Court repeatedly and impermissibly weighed the evidence and witness credibility. For example, the District Court ruled that the "subsequent acts leading up to Mr. Claus's termination were facially unrelated to Mr. Claus's military service <u>and were supported by plausible work-related justifications</u>." ER [SJ Order 10]. The District Court, however, cannot decide on summary judgment the plausibility of work-related justifications offered

28

by Canyon County; that task must be accomplished by the jury with the benefit of live witness testimony on a full evidentiary record.

The District Court also ruled that Canyon County's compensation scheme was a "genuine attempt to align compensation . . . ." ER [SJ Order 10]. Again, however, the District Court cannot decide on summary judgment what actions of Canyon County were "genuine." Doing so constitutes impermissible weighing of evidence and witness credibility which invades the province of the jury.

Similarly, the District Court ruled that "these are not the actions of discriminatory actors." ER [SJ Order 12]. Yet again, however, in making this ruling the District Court is impermissibly weighing the evidence, witness credibility, and drawing inferences in favor of the moving party Canyon County. It is up to the jury to decide whether the acts were discriminatory, not the District Court on summary judgment.

The District Court explicitly refused to draw inferences in favor of Mr. Claus, as required on summary judgment. "Mr. Claus urges the Court to infer that Messrs. Bazzoli and James committed these allegedly retaliatory acts because of his complaints about the allegedly discriminatory compensation scheme and his status as a military veteran. This is a bridge too far." ER [SJ Order 13]. "[T]he Court is simply unwilling to infer that Messrs. Bazzoli and James committed these workplace acts with discriminatory intent." ER [SJ Order 13]. By refusing to draw

inferences in favor of Mr. Claus, the District Court impermissibly drew inferences in favor of the moving party Canyon County. It is up to the jury on a full evidentiary record, not the District Court on summary judgment, to draw inferences and assess the credibility and motivations of Mr. Bazzoli and Mr. James and decide whether they acted with discriminatory intent in terminating Mr. Claus's employment.

The foregoing examples demonstrate the District Court looking at the facts and impermissibly drawing conclusions and inferences therefrom. But reasonable minds could differ; the jury could examine the facts and reach a different conclusion than the District Court regarding whether Mr. Claus's military service was a substantial or motivating factor in Canyon County's termination of Mr. Claus's employment.

> b. <u>There are Extensive Facts Upon Which the Jury Could Conclude that Canyon County Retaliated Against Mr. Claus on the Basis of his Protected Activity.</u>

The record is replete with facts upon which the jury could conclude that Canyon County retailed against Mr. Claus based on his USERRA-protected activity, especially bearing in mind the "minimal" evidentiary requirement, the burden of "very little evidence" placed on a plaintiff asserting employment discrimination claims at the summary judgment stage of proceedings. *Wallis*, 26 F.3d at 889; *Lam*, 40 F.3d at 1563. Reasonable minds could disagree on the merits

30

of Mr. Claus's claims. But such reasonable disagreement is the definition of an issue of fact rendering summary judgment inappropriate and is the purpose of our civil jury trial system, to allow a jury of Mr. Claus's peers, not the District Court, to decide the merit of his claims.

First, there is the conduct by Mr. Bazzoli and Mr. James after Mr. Claus's USERRA-protected activity in December of 2017. Mr. Bazzoli and Mr. James would constantly make belittling remarks to Mr. Claus about him being a "fourteen-year attorney." Mr. Bazzoli and Mr. James also began to single Mr. Claus out based on minor offenses, offenses that other attorneys in the office were not singled out for. Mr. James told Mr. Claus that he could be fired for using his laptop on the edge of a paralegal's desk. Mr. James told Mr. Claus that he could be fired for not clearing his email inbox quickly enough. Mr. Claus was singled out for being late to Court, but this was a common occurrence for all public defenders given the heavy caseloads and numerous hearings they were managing. Mr. Claus won a Rule 29 "half-time" motion and when discussed in front of other attorneys, Mr. Bazzoli did not congratulate Mr. Claus at all, rather Mr. Bazzoli dismissed Mr. Claus's success by stating that Mr. Claus's victory didn't count as a jury verdict. Similarly, Mr. Claus successfully appealed a magistrate ruling to the district court and when the case was discussed in front of other attorneys Mr. James did not congratulate Mr. Claus; Mr. James said that "set 'em free McKee threw you a

bone." Mr. Claus also won a child protection trial, preventing the State from terminating a parent's rights, and Mr. Bazzoli and Mr. James did not say a word in praise.

Secondly, Mr. Claus was involuntarily transferred from his misdemeanor criminal docket assignment to the child protection docket a few months after he complained to Mr. Bazzoli and Mr. James in December of 2017. Mr. Claus was given no reason for his transfer to the child protection docket. Mr. Claus was not asked if he wanted to move to the child protection docket. Mr. Claus had never done child protection work before. No one else in the office was asked if they were interested in going to the child protection docket. In Mr. Claus's experience at both the Twin Falls County and Canyon County public defender's offices, a misdemeanor criminal assignment was the stepping-stone to a felony criminal assignment, which was the stepping stone to a judgeship. Indeed, another public defender, Mary Gigray, was moved from the child protection docket to Mr. Claus's misdemeanor criminal docket, and she was promoted to felony work shortly thereafter. Mr. James did not ask Mr. Claus if he was interested in the felony position to which Ms. Gigray was promoted, nor did he ask Mr. Bazzoli to consider Mr. Claus for the felony position. Ms. Gigray had ten years' experience when she was promoted to a felony team. Attorneys with comparable experience to

32

Mr. Claus were beginning to receive promotions to felony teams when Mr. Claus was moved to the child protection docket.

Lastly, and most significantly, is the pretextual nature of Canyon County's termination of Mr. Claus's employment over the witness list issue. Mr. Claus does not dispute that he sent the critical amended witness list to his friend Ms. Gianuzzi for filing because Canyon County did not provide any means, training, or support for him to file documents after-hours.

A reasonable jury could certainly conclude that Canyon County's stated reason for termination of the witness list issue was a pretext. Neither Mr. Bazzoli nor Mr. James could articulate any specific prejudice to Mr. Claus's client that resulted from Ms. Gianuzzi's filing of the amended witness list. (James Dep., Neither Mr. Bazzoli nor Mr. James contacted Ms. Gianuzzi to investigate the witness list issue.

Indeed, Mark Fucile, an extensively experienced expert in legal ethics who regularly publishes legal ethics articles in the state bar journals for Idaho, Washington and Oregon, opined that Mr. Claus did not violate the Idaho Rules of Professional Conduct in asking Ms. Wilson to file the witness list: "From the perspective of legal ethics, Mr. Claus retained supervisory responsibility over Ms. Wilson's filing of the Amended Witness List even though she was not an employee of the Canyon County Public Defender's Office. Because Ms. Wilson was under

Mr. Claus's supervision as a matter of legal ethics, he maintained any duty of confidentiality relating to filing the Amended Witness List even though Ms. Wilson was not an employee of the Canyon County Public Defender's Office. Mr. Claus did not violate Idaho RPC 8.4(c) by having Ms. Wilson file the Amended Witness List."

Furthermore, Mr. Bazzoli and Mr. James took the startling aggressive position that Mr. Claus's filing of the amended witness list, via Ms. Gianuzzi, with a certificate of service signed by Ms. Taillon, constituted a criminal felony because it violated Idaho Code § 18-3203 which prohibits the intentional filing of "false or forged" instruments. Despite allegedly believing that Mr. Claus committed a felony involving "false or forged instruments," however, neither Mr. James nor Mr. Bazzoli filed a bar complaint against Mr. Claus. Indeed, Mr. Fucile opines that Mr. Bazzoli and Mr. James, assuming they genuinely believed that Mr. Claus committed a felony, in no way satisfied their reporting obligations under Rule 8.3 of the Idaho Rules of Professional Conduct: "Here, if Mr. Bazzoli and Mr. James truly believed that Mr. Claus had committed the serious misconduct they allege, their responsibility under RPC 8.3(a) was to file a written grievance against Mr. Claus with the Idaho State Bar using procedures that are readily available and thoroughly explained on the ISB web site." A jury could certainly infer that Mr. Bazzoli and Mr. James did not actually believe Mr. Claus committed a felony or

else they would have reported him to the state bar; rather, Mr. Bazzoli and Mr. James were looking for a pretextual reason to terminate Mr. Claus's employment.

Mr. Claus is the only public defender to be terminated by Mr. Bazzoli. At the time his employment was terminated, Mr. Claus had no disciplinary record at Canyon County. Mr. Claus was never suspended or disciplined in writing during his tenure. Mr. Claus received coaching from Mr. James and Mr. Bazzoli, as did other attorneys, but this coaching was not documented.

Canyon County even felt compelled to explicitly state it was <u>not</u> terminating Mr. Claus's employment for retaliatory reasons:

> A review of Canyon County records finds your termination is premised upon your actions in a termination matter where you violated court rules and professional standards by directing a document to be filed by someone other than our support staff and who is not employed or authorized to be filing documents on behalf of this office, and other issues previously brought to your attention, <u>not upon any retaliation claims that were raised in 2017 and addressed to your satisfaction related to compensation</u>.

Such statement admits Mr. Claus engaged in protected activity and could be interpreted by a reasonable juror as a "doth protest too much" moment on the part of Canyon County. Canyon County was sufficiently cognizant that its actions gave the appearance of retaliation so as to explicitly disclaim such state of affairs, but such efforts can certainly indicate an awareness of an unlawful motive and discriminatory animus by Canyon County.

In sum, a jury could consider the (1) belittling comments made by Mr. Bazzoli and Mr. James after Mr. Claus engaged in USERRA-protected activity; (2) Mr. Claus's unexplained transfer to the child protection docket after he engaged in USERRA-protected activity; and (3) the suspicious facts surrounding the filing of the amended witness list and the failure of Mr. Bazzoli and Mr. James to report Mr. Claus to the Idaho State Bar and conclude that Canyon County retaliated against Mr. Claus based on his engagement in USERRA-protected activity. A jury could also find in favor of Canyon County, but that is the very point. Because a jury could find in favor of either party, summary judgment in favor of Canyon County is inappropriate. The District Court erred in weighing the evidence, witness credibility, and drawing inferences in favor of the moving party Canyon County and essentially issued an impermissible ruling on the merits of Mr. Claus's claim. Reversal and remand to remedy this error is appropriate.

   2.    *The District Court Erred in Ruling as a Matter of Law that Mr. Claus's Employment was Terminated for a Non-Discriminatory Reason.*

      a.    The District Court Impermissibly Weighed Evidence, made Credibility Determinations, and Drew Inferences in Favor of the Moving Party Canyon County.

The District Court next ruled that, as a matter of law, Canyon County terminated Mr. Claus's employment for a non-discriminatory reason, namely the filing of the amended witness list. Stated differently, the District Court ruled that

even if Mr. Claus could point to facts creating an inference of retaliation at the first step of the USERRA analysis, as a matter of law Canyon County terminated Mr. Claus's employment for non-discriminatory reasons.

Again, however, the District Court relied on impermissible weighing of evidence, witness credibility, and inferences drawn in favor of the moving party Canyon County to reach this ruling.

The District Court properly identified a key credibility question: "The proper inquiry here is not whether Messrs. Bazzoli and James were technically correct in their belief that Mr. Claus's conduct violated any policies, rules, or statute (the Court takes no stand on that question), but whether their belief was genuine." ER [SJ Order 16]. Stated differently, the District Court is raising the question of whether the reason offered by Mr. Bazzoli and Mr. James to terminate Mr. Claus's employment, the filing of the witness list, was legitimate or pretextual.

The District Court erred because it went on to answer that question in the affirmative as a matter of law rather than let the jury decide that question with the benefit of live witness testimony and a full evidentiary record: "[Mr. Claus] would have been terminated even if he had never served in the military.[2] Summary judgment is therefore appropriate in this alternate respect." [SJ Order 16].

---

[2] The question is more appropriately framed as whether Mr. Claus's employment would have been terminated even if he had never engaged in USERRA-protected

37

For the reasons set forth in detail in the preceding section which will not be regurgitated here, a jury could examine the facts and circumstances surrounding the filing of the amended witness list and reach a different conclusion than that reached by the District Court, again taking into account the "minimal" evidentiary requirement, the burden of "very little evidence" placed on a plaintiff asserting employment discrimination claims at the summary judgment stage of proceedings. *Wallis*, 26 F.3d at 889; *Lam*, 40 F.3d at 1563. A juror could consider (1) the opinions of Mr. Fucile that Mr. Claus did nothing wrong regarding the filing of the amended witness list, (2) the failure of Mr. Bazzoli and Mr. James to report Mr. Claus to the Idaho State Bar despite alleging he committed a felony, (3) Mr. Claus's lack of disciplinary record; and (4) Canyon County's mention of retaliation in its termination letter and reasonably conclude that Canyon County's termination of Mr. Claus's employment based on the witness list was pretextual in nature. It is up to a jury of Mr. Claus's peers, not the District Court on summary judgment, to decide whether Canyon County's termination of Mr. Claus's employment based on the witness list was genuine or pretextual, with the benefit of live witness testimony and a full evidentiary record. Accordingly, the District Court erred in

---

activity in December of 2017. *See Wallace*, 479 F.3d at 624 (retaliation claims cognizable under USERRA).

ruling as a matter of law that Canyon County terminated Mr. Claus's employment for non-discriminatory reasons.

## CONCLUSION

The District Court in this case went beyond its purview at the summary judgment stage of proceedings by weighing the evidence, witness credibility, drawing inferences in favor of the moving party and making what in essence amounted to a ruling on the merits of Mr. Claus's claims.

Appropriately applying the "minimal" evidentiary requirement, the burden of "very little evidence" placed on a plaintiff asserting employment discrimination claims at the summary judgment stage of proceedings as described in *Wallis* and *Lam*, *supra*, it is clear that genuine disputes of material fact exist in this case regarding (1) whether Canyon County retaliated against Mr. Claus after he engaged in USERRA-protected activity in December of 2017; and (2) whether the non-discriminatory reason for terminating Mr. Claus's employment offered by Canyon County was pretextual in nature. Mr. Claus or Canyon County may prevail on the merits at trial, but it is for a jury of Mr. Claus's peers to decide these issues with the benefit of live witness testimony and a full evidentiary record. The District Court erred in deciding these issues as a matter of law at the summary judgment stage of proceedings; reversal and remand is therefore appropriate.

DATED this 24th day of October, 2022.

LAW OFFICES OF MATTHEW G. GUNN

/s/ Matthew G. Gunn
Matthew G. Gunn
Attorneys for Appellant

## **STATEMENT OF RELATED CASES**

Plaintiff/Appellant is not aware of any other cases before the Ninth Circuit which are related to his appeal.

## **CERTIFICATE OF COMPLIANCE**

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached Opening Brief is proportionately spaced, has a typeface of 14 points or more and contains 9173 words.

DATED THIS 24th day of October, 2022.


/s/ Matthew G. Gunn
for Rossman Law Group, PLLC and Law
Offices of Matthew G. Gunn

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Matthew G. Gunn
for Rossman Law Group, PLLC and Law
Offices of Matthew G. Gunn