**No. 22-35292**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

JOHANNES CLAUS,
an individual

*Plaintiff-Appellant*,

v.

CANYON COUNTY, IDAHO,
a political subdivision of the State of Idaho

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Idaho
No. 1:19-CV-00197-REP
Hon. Raymond E. Patricco

---

**APPELLEE'S ANSWERING BRIEF**

---

Pam S. Howland, ISB #6177
Benjamin T. Cramer, ISB #9220
Idaho Employment Lawyers, PLLC
1112 W. Main Street, Suite 105
Boise, Idaho 83702
208-901-3912
phowland@idemploymentlawyers.com
bcramer@idemploymentlawyers.com

*Attorneys for Appellee*
Canyon County, Idaho

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................v

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT ........................................................3

STATUTORY AND REGULATORY AUTHORITIES ..........................4

ISSUE PRESENTED ............................................................................4

STATEMENT OF THE CASE...............................................................4

SUMMARY OF THE ARGUMENT ...................................................11

STANDARD OF REVIEW .................................................................13

ARGUMENT ......................................................................................15

I.      The District Court Properly Concluded There Are No Genuine Issues of Material Fact that Mr. Claus's Termination Was <u>Not</u> Discrimination or Retaliation Related to His Military Service...........15

       A.    Mr. Claus's Military Status Was Not a Substantial or Motivating Factor in His Termination. ....................................16

              1.    An Analysis of the Temporal Proximity Factor Shows that Canyon County Did Not Discriminate Against Mr. Claus. ..............................................................................18

              2.    There Are No Inconsistencies Between Canyon County's Termination of Mr. Claus for the Disclosure of Confidential Information and Anything Else Canyon County Said or Did. ......................................................20

              3.    There Are No Facts to Show Canyon County Expressed Hostility Toward or Otherwise Discriminated Against Veterans or Other Military Personnel............................22

4.      Canyon County Did Not Treat Mr. Claus Differently
        Than Others. ....................................................................25

B.      The District Court Properly Concluded that Canyon County
        Demonstrated, as a Matter of Law, that Mr. Claus's
        Termination Was Based on His Own Improper Conduct and
        Would Have Resulted Regardless of Whether He Served in the
        Military.....................................................................................26

        1.      Although Mr. Claus Tries to Downplay the Severity of
                His Actions, Canyon County Genuinely Believed His
                Conduct Violated County Policies, Court Rules, the
                Idaho Rules of Professional Conduct, and Possibly Idaho
                State Law. ....................................................................27

        2.      It Is Immaterial Whether Mr. Claus's Actions
                Technically Were Violations of the Idaho Rules of
                Professional Conduct. ..................................................32

C.      To the Extent that the *McDonnell Douglas* Burden Shifting
        Framework Applies, Mr. Claus Has Not Created a Genuine
        Issue of Material Fact As to Pretext of Discriminatory Animus
        When Considering All the Facts in a Light Most Favorable to
        Mr. Claus..................................................................................34

        1.      Mr. Claus's Subjective Perception that Mr. Bazzoli was
                "Highly Dismissive" of His Compensation Adjustment is
                Refuted by Mr. Bazzoli's Actual Actions. .....................35

        2.      The Fact that Mr. Claus Received Coaching for
                Correction Does Not Create an Inference of
                Discrimination. .............................................................36

        3.      Mr. Claus's Assignment to the Child Protection Docket
                Assignment Does Not Create an Inference of
                Discrimination. .............................................................37

        4.      There are No Facts in the Record Otherwise Showing
                Mr. Claus Was Treated Differently Than Others or
                Treated Unfairly By His Supervisors. ...........................39

5. The Termination Letter Responded to Allegations Mr. Claus Raised in His Good-Faith Hearing and, in Doing So, Is Not Evidence of Discriminatory Animus.............42

6. Canyon County's Neutrally Applied Compensation System is Not Evidence of Pretext and Discriminatory Animus...........................................................................43

D. The District Court Properly Dismissed Plaintiff's Emotional Distress Claim as Canyon County has Demonstrated, as a Matter Of Law, it Did Not Breach a Legal Duty to Mr. Claus.45

CONCLUSION ........................................................................46

STATEMENT OF RELATED CASES: Form 17 ............................................. A - 1

CERTIFICATE OF COMPLIANCE: Form 8 .................................................B - 1

ADDENDUM: Pertinent Statutes, Regulations, and Rules................................C - 1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....................................13, 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)................................................13, 14

*Coyaso v. Bradley Pac. Aviation, Inc.*, 578 F. App'x 715 (9th Cir. 2014)..............20

*Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299 (10th Cir. 2017)....................................32

*Edmondson v. Shearer Lumber Prods.*, 75 P.3d 733 (Idaho 2003).........................45

*Frogley v. Meridian Joint Sch. Dist. No. 2*, 314 P.3d 613 (Idaho 2013)................45

*Hatheway v. Bd. of Regents of Univ. of Idaho*, 155 Idaho 255, 310 P.3d 315 (2013) .................................................................................................................41

*Heldwein v. ZMD Am., Inc.*, No. 4:13-cv-00440-BLW, 2015 WL 3756400 (D. Idaho June 16, 2015)...............................................................................19

*Huhmann v. Fed. Express Corp.*, 874 F.3d 1102 (9th Cir. 2017) ...........................34

*Hutchins v. DIRECTV Customer Serv., Inc.*, 963 F.Supp.2d 1021 (D. Idaho 2013 32

*Leisek v. Brightwood Corp.*, 278 F.3d 895 (9th Cir. 2002) ............................ passim

*Leslie v. Grupo ICA*, 198 F.3d 1152 (9th Cir. 1999)...............................................14

*McLaughlin v. Liu*, 849 F.2d 1205 (9th Cir. 1988)..................................................14

*Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434 (9th Cir.1990) ..........................22, 36

*Nelson v. Pima Cmty. College*, 83 F.3d 1075 (9th Cir. 1996)..........................14, 35

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000).........13

*Rademacher v. HBE Corp.*, 645 F.3d 1005 (8th Cir. 2011) .............................19, 22

*Savage v. Fed. Express Corp.*, 856 F.3d 440 (6th Cir. 2017)...........................18, 26

*Scott v. Harris*, 550 U.S. 372 (2007) ................................................................14, 35

*Staub v. Proctor Hosp.*, 562 U.S. 411 (2011).........................................................22

*Suzuki Motor Corp. v. Consumers Union, Inc.*, 330 F.3d 1110 (9th Cir. 2003) .....14

*Wallace v. City of San Diego*, 479 F.3d 616 (9th Cir. 2007)...................................34

*Whitman v. Mineta*, 541 F.3d 929 (9th Cir. 2008)...................................................14


**Statutes**

38 U.S.C. § 4301 .......................................................................................15

38 U.S.C. § 4311 .......................................................................................15

Idaho Code § 18-3203 ........................................................................ 28, 29

Uniformed Services Employment and Reemployment Rights Act of 1994
    ("USERRA").............................................................................. passim


**Other Authorities**

Canyon County Personnel Policy 2.12 .......................................................24

Canyon County Personnel Policy 8.03 .......................................................29

Canyon County Personnel Policy 8.04 .......................................................29

Canyon County Personnel Policy 8.05 .......................................................29


**Rules**

Fed. R. Civ. P. 56 ............................................................................... 13, 14

Idaho Court Administrative Rule 32 (g)(9)(a)...................................... 28, 31

Idaho Rules of Professional Conduct............................................... passim

Idaho Rules of Professional Conduct 1.6........................................... 28, 30

# INTRODUCTION

Plaintiff-Appellant Johannes Claus was an at-will employee who worked as an attorney with the Canyon County Public Defender's Office. Mr. Claus is a veteran whose Air Force JAG concluded in May 2013, more than four years before he began working for Canyon County ("County"), Defendant-Appellee. Approximately two years into his employment with the County, and immediately after Mr. Claus's intentional and unauthorized disclosure of an amended witness list in a sealed Child Protection Act ("CPA") matter, Canyon County placed Mr. Claus on administrative leave and notified him of its intent to terminate. Mr. Claus requested a hearing regarding his termination and, for the first time, raised allegations of discrimination related to his military service. Canyon County disagreed and outlined its basis for termination in its termination letter, explaining that he was terminated because he violated court rules and professional standards by directing a document to be filed by someone unaffiliated with the Canyon County Public Defender's office and who was not authorized to file documents for the office.

Mr. Claus then filed this action alleging a single count of termination in violation of USERRA and a second count for negligent or intentional infliction of emotional distress. After discovery, Canyon County moved for summary

judgment, arguing that Mr. Claus had failed to establish a *prima facie* case of discrimination or retaliation under USERRA or, in the alternative, that Canyon County had proved its affirmative defense – that it would have terminated Mr. Claus regardless of whether he served in the military or not. Canyon County argued that Mr. Claus could not cite to a single discriminatory comment or act supporting the conclusion that his termination was related to his military service. At summary judgment, the Honorable Raymond Patricco agreed. He granted summary judgment for Canyon County, as no genuine issue of material fact existed as to both issues. Mr. Claus subsequently submitted this appeal, arguing – in essence – that his personal perceptions and conclusory interpretations of certain facts should be sufficient to avoid summary judgment. However, as the District Court noted, Mr. Claus's personal perception or subjective conclusion regarding a fact does not make such an interpretation reasonable.

On appeal, Mr. Claus continues to argue that these subjective and conclusory interpretations of various facts and incidents are sufficient evidence for a reasonable jury to find his termination was discrimination in violation of USERRA. Mr. Claus seems to suggest that, at summary judgment, the Court was required to ignore facts unfavorable to him. However, the proper summary judgment standard is for the Court to consider all facts and construe them in a light most favorable to him when there is room for reasonable interpretation.

2

Accordingly, when one reviews all the factual evidence for each alleged issue, as the District Court did, Mr. Claus's perceptions are unsubstantiated and do not create a genuine issue of material fact as to neither a pattern of discrimination nor discriminatory animus related to his termination, or otherwise. Instead, Mr. Claus is grasping "at innocuous straws to conjure a claim and connection where none exists.

The District Court was correct to consider all the factual evidence and not to simply ignore facts unfavorable to Mr. Claus or adopt – as truthful – his perceptions as to what each fact means. Instead, when construing all of the facts, even in a light most favorable for Mr. Claus, it is clear that summary judgment was and remains appropriate. Respectfully, this Court should uphold the determination of the District Court and hold that Mr. Claus failed to establish his *prima facie* case or, in the alternative, that Canyon County proved its affirmative defense as a matter of law – that Mr. Claus would have been terminated even if he had never served in the military.

## JURISDICTIONAL STATEMENT

Defendant-Appellant Canyon County concurs with Plaintiff-Appellee's jurisdictional statement and makes no challenge based on jurisdictional grounds.

3

## STATUTORY AND REGULATORY AUTHORITIES

All relevant statutory and regulatory authorities appear in the Addendum to this brief.

## ISSUE PRESENTED

1. Did the District Court correctly grant Canyon County's motion for summary judgment when it concluded that Mr. Claus failed to meet his *prima facie* burden and, alternatively, that Canyon County, as a matter of law, established that Plaintiff's termination was for legitimate, non-discriminatory reasons unrelated to his military service or his exercise of a right under USERRA?

## STATEMENT OF THE CASE

Johannes Claus was an at-will employee hired in October 2016 as an attorney for the Canyon County Public Defender's office. 1-ER-3. During the application process, Mr. Claus identified himself as a disabled veteran who served in the Air Force JAG between January 2005 and May 2013. *Id.*; 2-ER-259; 3-ER-462.

On July 27, 2018, Mr. Claus was placed on administrative leave and received a pre-termination notice letter. 1-ER-6. This occurred four days after Canyon County discovered that he intentionally disclosed an amended witness/exhibit list, in a sealed Child Protection Act ("CPA") case, to a non-

attorney friend outside of the Canyon County Public Defender's office.  1-ER-5-6.

Mr. Claus disclosed the amended witness/exhibit list on July 20, 2018.  1-ER-5.

Among other things, the amended witness list contained the parties' true names,

the client's name, and retained the signature of Mr. Claus's legal assistant, Ms.

Christina Taillon, on the Certificate of Service (even though she was not involved

in the filing).  *Id.*  Mr. Claus asked his friend, Ms. Ashley Gianuzzi (nee Wilson),

to electronically file the document with the Court, even though she was not

employed by the Canyon County Public Defender's office and was otherwise

unauthorized to file the document on behalf of the office.  1-ER-5-6.

After an investigation by Chief Public Defender Aaron Bazzoli and Deputy

Chief Jesse Scott James – including conversations with Mr. Claus's legal assistant

Ms. Taillon, opposing counsel, Mr. Claus, Idaho State Bar Counsel[1], and the trial

court judge (the Honorable Courtnie Tucker) of the sealed case – Canyon County

determined the disclosure to be a violation of Canyon County's policies and the

procedures of the Canyon County Public Defender's Office.  1-ER-5-6; 1-ER-242

at ¶ 6.  In addition, Canyon County also believed Mr. Claus's conduct to be a

breach of an attorney's ethical duty to his client, a breach of lawyer/client

---

[1] During the relevant periods of this matter, the Idaho State Bar Counsel was Mr.
Brad Andrews.  Mr. Andrews retired from the position in June 2022.  For the
purposes of this brief, Idaho State Bar Counsel refers to Mr. Brad Andrews.

confidentiality governed by the Idaho Rules of Professional Conduct, a breach of court rules due to the sealed nature of the case, and a potential criminal violation due to misrepresentation on the certificate of service. 1-ER-5. At all times, Canyon County acted consistently with these beliefs and consulted Idaho State Bar Counsel, the trial court judge of the sealed case, and the Canyon County Prosecutor's office. 1-ER-5-6.

In response to the pre-termination notice, Mr. Claus requested a name-clearing hearing in writing on July 30, 2018. 1-ER-6. In that same letter, and for the first time, Mr. Claus alleged, among other things, that his termination was the result of discrimination or retaliation in violation of USERRA. 1-ER-6; 2-ER-232. Mr. Claus attempted to connect his termination to a compensation issue he raised the prior year related to a newly-implemented County-wide compensation system – the rollout of which pre-dated the employment of both Chief Public Defender Bazzoli and Chief Deputy James. 1-ER-3-4, 6. The new compensation system considered years of service for both salary and classification, and there was some confusion over whether that meant years since a first bar admission, or years of relevant service. 1-ER-3. The prior administration of the Canyon County Public Defender's office interpreted this to mean years of relevant service. 1-ER-3. They analyzed compensation by reviewing all attorneys and the work they had performed since becoming licensed. *Id.* They then subtracted from the date of

6

first bar passage the unrelated and non-legal experience of seven of its attorneys, including Mr. Claus. 1-ER-3-4. Mr. Claus was given credit for six of his thirteen years since first bar passage. 1-ER-3; 3-ER-246. He was given credit for six years because he was unemployed for some of that time and did some legal work unrelated to the type of work performed by public defenders. 1-ER-3-4; 2-ER-259; 3-ER-462. In addition, he had held some non-legal jobs, like working for the post office. *Id.* This was similar treatment to other attorneys in the office who did not receive credit for years as practicing as a tax attorney, for example, and for periods of non-legal employment. 2-ER-259; 3-ER-462.

Mr. Claus believed that it was improper to discount <u>any</u> of his years since his first bar exam passage, <u>whether he was employed in a legal position, the military, or otherwise</u>, and raised his concerns in a meeting with Messrs. Bazzoli and James on December 12, 2017 – Mr. James' second day of employment. 1-ER-4. As a result of this meeting, the next day, Mr. Bazzoli requested information from the individuals at Canyon County who were involved in the implementation of the compensation system (since it was completed before Mr. Bazzoli began his employment). *See* 1-ER-3-4; 2-ER-258-9; 3-ER-454-62.

That information revealed that Mr. Claus had been credited for relevant service during his time in Air Force JAG Corps, as well as his time as a public defender, and had not been credited for his time as a mail clerk, periods of

7

unemployment, or for a portion of his JAG service that was not deemed to be related to his role in criminal defense. 1-ER-3; 2-ER-259; 3-ER-462. Specifically, the six years of credited service was for time Mr. Claus spent as a Public Defender, both at Twin Falls County and Canyon County, from December 2015 through the compensation roll out in October 2017, and the remaining four plus years accounted for some of Mr. Claus's time with the Air Force JAG, which spanned between January 2005 and May 2013. 2-ER-259; 3-ER-462. This amounted to uncredited JAG service of approximately four years of eight years of military service, and about four years of credited service, all based on relevancy of the work experience.

By December 28, 2017, Mr. Bazzoli decided to adjust Mr. Claus's years of service to reflect the full thirteen years (inclusive of time spent as a mail clerk and unemployed) based on the date of Mr. Claus's first bar exam passage in New York. 1-ER-3-4. Mr. Bazzoli obtained approval from the County Commissioners to retroactively adjust Mr. Claus's compensation accordingly and completed the adjustment, with full retroactive pay back to October 1, 2017, on January 3, 2018. 1-ER3-4. In short, Mr. Bazzoli – the same actor Mr. Claus now claims operated with discriminatory/retaliatory animus – both did not participate in the original compensation decision and affirmatively corrected the issue that is the basis of Mr. Claus's alleged protected activity.

In his July 30, 2018, letter requesting a good faith hearing for Canyon County, as well as in this lawsuit, Mr. Claus claims that Mr. Bazzoli and Mr. James began retaliating against him shortly after affirmatively correcting Mr. Claus's pay. Mr. Claus hinges his arguments on factually inaccurate comments he believes he heard, his own subjective perceptions, and his own conclusory interpretations of various actions, not on any objective facts. These include Mr. Claus's impression that Mr. Bazzoli was "highly dismissive" of his claim of discrimination on December 12, 2017, even though Mr. Bazzoli immediately investigated Mr. Claus's salary complaint and had resolved the issue by December 28, 2017. 1-ER-5. Mr. Claus also cited remarks made by Messrs. Bazzoli and James about him being a fourteen-year attorney, that he was allegedly transferred and "sidelined" to a child protection assignment, and that Messrs. Bazzoli and James allegedly did not praise him in a manner equal to other attorneys. 1-ER-13-4.

On August 2, 2018, Canyon County held a good faith hearing and, on August 6, 2018, Mr. Bazzoli upheld the termination and responded to the issues that Mr. Claus raised in his good-faith hearing, stating:

> Although I understand that you believe this termination to be unwarranted because you alleged retaliation for seeking a pay increase under the threat of a discrimination claim, this action, in my opinion, does not constitute an [sic] unlawful discrimination. . . . <u>A review of Canyon County records finds your termination is premised upon your actions in a termination matter where you violated court rules and</u>

<u>professional standards by directing a document to be filed by someone other than our support staff and who is not employed or authorized to be filing documents on behalf of this office, and other issues previously brought to your attention</u>, not upon any retaliation claims that were raised in 2017 and addressed to your satisfaction related to compensation.

1-ER-6; 2-ER-275 (emphasis added).

Canyon County compensated Mr. Claus through the effective date of his termination, August 7, 2018. 1-ER-6.

On May 31, 2019, Mr. Claus filed a complaint and demand for jury trial alleging "Termination in Violation of Uniformed Services Employment and Reemployment Rights Act of 1994", and "Negligent/Intentional Infliction of Emotional Distress." 1-ER-6; 8-ER-1638-9. On December 18, 2020, Canyon County filed for summary judgment on all claims. 8-ER-1644. Oral argument on the motion was held on August 31, 2021, before the Honorable Raymond Patricco. 2-ER-20. On March 15, 2022, Canyon County's motion for summary judgment was Granted, the Court having found that there were no genuine issues of material fact and that Mr. Claus failed to meet his *prima facie* burden:

> Even when the evidence is viewed in the light most favorable to Mr. Claus, he failed to submit evidence beyond his own conclusory allegations showing that, in terminating him, Canyon County "relied on, took into account, considered, or conditioned its decision" on his veteran status.

1-ER-15 (citations omitted). Alternatively, the Court also determined that Canyon County proved its affirmative defense that Mr. Claus would have been terminated

regardless of his military service, concluding that there was "no evidence on which a jury could reasonably find that Mr. Claus was terminated because of his military service." 1-ER-16. The Court went on to conclude:

> Although USERRA provides veterans many protections, it does not guarantee continued employment. Mr. Claus's claims against Canyon County are grounded in personal grievances and perceived slights which do not amount to violations of rights protected by law. In short, he would have been terminated even if he had never served in the military.

*Id.*

## SUMMARY OF THE ARGUMENT

Mr. Claus's opening brief alleges that the District Court improperly invaded the province of the jury when it granted summary judgment for Canyon County finding that Mr. Claus's termination was lawful and unrelated to his military service that predated his time with the County by years. However, Mr. Claus's argument fails and should be rejected by this Court. At its heart, Mr. Claus's position is that the District Court, at the summary judgment phase, was required to ignore inconvenient facts to Mr. Claus's position, ignore uncontroverted truths when they conflicted with Mr. Claus's personal subjective perceptions, and ignore facts in evidence that negated the subjective perceptions of Mr. Claus. In short, Mr. Claus argues that the District Court was required to adopt unreasonable

11

inferences based on the conclusory allegations and subjective perceptions of Mr. Claus.

The District Court correctly granted summary judgment for Canyon County because, even when construing all facts most favorably to Mr. Claus, an insufficient factual basis existed for Mr. Claus to establish his *prima facie* case for USERRA discrimination or retaliation related to his termination. *See* 1-ER-14-5 and *Leisek v. Brightwood Corp.*, 278 F.3d 895, 900 (9th Cir. 2002). Mr. Claus's own subjective views and conclusory interpretations of Canyon County's statements and actions, particularly when directly refuted with objective factual evidence in the record, do not establish a genuine issue of material fact by which a reasonable jury could conclude differently. *See* 1-ER-15.

Further, the District Court correctly found that Canyon County established its affirmative defense, as no genuine issue of material fact exists as to Canyon County's legitimate reason for terminating Mr. Claus. Canyon County's termination of Mr. Claus was based on its belief that, when Mr. Claus disclosed an amended witness/exhibit list in a sealed CPA case, he seriously breached his ethical duty to his client, he violated the Canyon County Public Defender's Office protocols and policies, he violated court rules, and he breached lawyer/client confidentiality (and possibly other provisions) of the Idaho Rules of Professional Conduct. 1-ER-5.

Consequently, summary judgment on behalf of Canyon County was appropriate and, respectfully, this Court should uphold the District Court's finding.

## STANDARD OF REVIEW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id*. at 252.

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways: (i) by producing evidence negating an essential element of the nonmoving party's case, or (ii) by showing that the non-moving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party

13

meets its burden of production, the burden then shifts to the non-moving party to identify specific facts from which a fact-finder could reasonably find in the non-moving party's favor. *Celotex*, 477 U.S. at 324.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Anderson*, 477 U.S. at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). However, "the Court is not required to adopt unreasonable inferences from circumstantial evidence." *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier-of-fact for the non-moving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("Mere allegations and speculation do not create a factual dispute for purposes of summary judgment.").

On appeal, a district court's decision to grant summary judgment is reviewed *de novo* by this Court. *See Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). This Court's review is governed by the same standard used by the trial court under Fed. R. Civ. P. 56(c). *See Suzuki Motor Corp. v. Consumers Union, Inc.*, 330 F.3d 1110, 1131 (9th Cir. 2003).

## ARGUMENT

## I. THE DISTRICT COURT PROPERLY CONCLUDED THERE ARE NO GENUINE ISSUES OF MATERIAL FACT THAT MR. CLAUS'S TERMINATION WAS <u>NOT</u> DISCRIMINATION OR RETALIATION RELATED TO HIS MILITARY SERVICE.

The District Court properly concluded that Mr. Claus's allegations against

Canyon County cannot satisfy the mandatory burden-shifting framework

applicable to USERRA claims. USERRA prohibits discrimination against persons

because of their service in the uniformed services. 38 U.S.C. § 4301(a)(3).

USERRA further establishes that:

> An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

38 U.S.C. § 4311(b). A violation of USERRA occurs during the "exercise of a

right . . . [and] is a motivating factor in the employer's action, unless the employer

can prove that the action would have been taken in the absence of such person's

enforcement action, testimony, statement, assistance, participation, or exercise of a

right." 38 U.S.C. § 4311(c)(2)(D).

The employee has the initial burden to demonstrate, by a preponderance of

15

evidence, that his or her protected status was "a substantial or motivating factor in the adverse [employment] action." *Leisek*, 278 F.3d at 899 (internal quotation marks and citations omitted). If demonstrated, then summary judgment is appropriate if the employer has established as an uncontroverted fact that it would have terminated the Plaintiff's employment regardless of the employee's protected status. *Id.*

As further set forth below, Mr. Claus did not and cannot show that his veteran status or his compensation concerns were a substantial or motivating factor in his termination. Instead, Mr. Claus's termination was for legitimate, non-discriminatory reasons based on his disclosure of confidential information and it would have occurred regardless of his prior service in the JAG. By relying solely on his own self-serving "senses," "feelings," and "perceptions" – none of which are supported by objective record evidence – he has failed to create a genuine issue of material fact.

### A. Mr. Claus's Military Status Was Not a Substantial or Motivating Factor in His Termination.

In analyzing Mr. Claus's claim, the District Court applied the correct legal standard in arriving at its conclusion that Mr. Claus had failed to meet his *prima facie* burden. It noted that, under USERRA, courts consider a variety of factors to determine whether an employer acted with a discriminatory motive. *Leisek*, 278 F.3d at 900. Those factors include (1) proximity in time between the employee's

military activity and the adverse employment action, (2) inconsistencies between

proffered reason and other actions of the employer, (3) an employer's expressed

hostility towards members protected by the statute together with knowledge of the

employee's military activity, and (4) disparate treatment of certain employees as

compared to other employees with similar work records or offenses. *Id.* The court

may consider "all record evidence," including the employer's "explanations for the

actions taken." *Id*.

The District Court correctly concluded that, when applied to the undisputed

facts here, these factors conclusively show Mr. Claus is unable to establish that his

military service, or the exercise of any related right, was a substantial or motivating

factor in his termination. Specifically, the District Court found the factors

establish that: 1) the amount of time that passed between Mr. Claus's military

service and his termination, as well as the amount of time between his

compensation complaint and his termination, does not show that military status

was a motivating factor; 2) there are no inconsistencies between Canyon County's

proffered reason for termination and other facts; 3) there is no evidence that shows

Canyon County was hostile toward military veterans; and 4) there is no objective

evidence to show Mr. Claus was treated differently than anyone else for similar

offenses. 1-ER-14-5.

### 1. An Analysis of the Temporal Proximity Factor Shows that Canyon County Did Not Discriminate Against Mr. Claus.

The District Court properly concluded that there was no temporal link between Mr. Claus's protected class status or his protected activity and his termination.  1-ER-13-4.  Proximity in time between an adverse action and military service or an enforcement of rights under USERRA is one factor courts have considered to determine whether an employer acted with discriminatory motivation.  *See Leisek*, 278 F.3d at 900.  When an "adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is sufficient to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."  *Savage v. Fed. Express Corp.,* 856 F.3d 440, 448 (6th Cir. 2017).  When considering temporal proximity, the key inquiry "is whether the relationship between the adverse action and protected inquiry raises an inference of retaliation or discriminatory motivation."  *Id.*

The five-year span between Mr. Claus's military service, which concluded in 2013, and his termination in July 2018 does not raise any inference of retaliatory or discriminatory motive based on temporal proximity.  Mr. Claus was unaffiliated with Canyon County at the time of his military service, and there are no facts to suggest that the performance of his military service was in any way related to his termination.

18

When considering Mr. Claus's claim of retaliation for raising compensation concerns, Mr. Claus's termination occurred more than ten months after he first requested to have his civil legal experience as a JAG officer counted under his years of service. 2-ER-244,246 at ¶¶ 12, 20; 2-ER-108-9 at ¶¶ 12, 20. This period of time does not raise an inference of discrimination, either, as courts have found that even a two-month lapse between alleged protected activity and an adverse action can be too long. *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1011 (8th Cir. 2011). When courts have considered temporal proximity to raise an inference, it has been much shorter periods of time, such as two weeks. *See e.g., Heldwein v. ZMD Am., Inc.,* No. 4:13-cv-00440-BLW, 2015 WL 3756400, at *4 (D. Idaho June 16, 2015).

The eight months between Mr. Claus's expressed compensation concern (and the prompt remedy to that concern) and his termination exceeds the reasonable scope of proximity in time, particularly when there are no facts in the record to suggest any ongoing discussion or conversation related to Mr. Claus's former military service or compensation complaint. Instead, the record shows that Mr. Bazzoli agreed with Mr. Claus's request for an upward adjustment, promptly advocated on his behalf to get it done, and secured a healthy raise on Mr. Claus's behalf of more than $15,000.00 per year, which was paid retroactively. 1-ER-3-4. As the District Court noted, Canyon County's correction of the issue, at the behest

19

of Mr. Bazzoli, "are not the actions of discriminatory actors."  1-ER-13.

Moreover, as the District Court noted, the only obvious temporal proximity here is between Mr. Claus's disclosure of the witness list in a sealed child protection case on July 20, 2018, Mr. Claus's administrative leave and pre-termination notice on July 27, 2018, and Mr. Claus's termination on August 6, 2018.  1-ER-17.  Temporal proximity unequivocally demonstrates that Claus was terminated for a legitimate, non-discriminatory, and non-retaliatory reason, and does not support Mr. Claus's *prima facie* case.   It breaks any "inferential chain of discriminatory intent, alleged by Mr. Claus, between the compensation scheme and his complaints, and his termination." 1-ER-13.

### 2.  There Are No Inconsistencies Between Canyon County's Termination of Mr. Claus for the Disclosure of Confidential Information and Anything Else Canyon County Said or Did.

Inconsistencies between an employer's proffered reasons for the adverse action and other actions of the employer is the second factor courts consider when determining the existence of discriminatory motive.  *Leisek*, 278 F.3d at 900.  When an employer takes the time to investigate the facts and circumstances related to whether or not an employee should be disciplined, it bolsters the employer's conclusion that there is no discriminatory motive. *Coyaso v. Bradley Pac. Aviation, Inc.*, 578 F. App'x 715, 717 (9th Cir. 2014).

After analyzing this factor, the District Court correctly concluded that there

were no inconsistencies between Mr. Bazzoli's actions in terminating Mr. Claus and other actions taken by Canyon County. 1-ER-14. Canyon County terminated Mr. Claus because he violated policies, court rules, and professional standards by directing a document to be filed by a third party outside of the office who was not authorized to view such documents or file them on Canyon County's behalf. After Mr. Bazzoli and Mr. James learned of Mr. Claus's improper disclosure and the related facts, they gathered facts and analyzed the extent to which Mr. Claus engaged in misconduct, violated rules, and possibly even violated the law. 1-ER-5-6. Neither Mr. Bazzoli nor Mr. James had ever encountered a similar situation involving the intentional disclosure of a confidential document in a sealed child protection case and sought to understand the ramifications. 1-ER-15. They spoke with Mr. Claus, contacted Mr. Brad Andrews, the Idaho State Bar Counsel at the time, and spoke with the trial court judge (the Honorable Courtnie Tucker) assigned to the child protective action in question. 1-ER-5-6.

Mr. Bazzoli and Mr. James ultimately concluded that Mr. Claus's actions constituted serious misconduct that warranted termination. 1-ER-6. Their course of conduct demonstrates consistency with that belief. Given the consistency between Canyon County's actions and its proffered reason for terminating Mr. Claus, as the District Court concluded, there is no factual basis upon which to infer discriminatory motive on the part of Canyon County.

### 3. There Are No Facts to Show Canyon County Expressed Hostility Toward or Otherwise Discriminated Against Veterans or Other Military Personnel.

An employer's discriminatory motive can be inferred through expressed hostility towards service members. *Leisek*, 278 at 900. Even if the employer complies with its obligations [under USERRA], hostility towards the employee's military service may support an inference that such involvement was a motivating factor in the employer's actions. *See Staub v. Proctor Hosp.*, 562 U.S. 411 at 417 (2011). For example, statements that the employee should "pay the department back for everyone else having to bend over backwards to cover his schedule," statements that "military duty had been a strain on the department," and statements indicating that the employer should "get rid of him," could raise an inference of discrimination under this factor. *Id* at 414, 423.

On the other hand, stray remarks are insufficient to establish discrimination. *See Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir.1990). Similarly, remarks expressing frustration with an employee's enlistment are insufficient to support an inference that the employee's protected status was a motivating factor. *See Rademacher*, 645 F.3d at 1011.

As noted by the District Court, there is no evidence of Canyon County's hostility toward the military or Mr. Claus's military service. 1-ER-14. The District Court concluded Mr. Claus could cite to nothing more than "stray

remarks" and this was insufficient, as a matter of law, to restore the "broken inferential chain of discriminatory intent." *Id.*  Mr. Claus cannot point to a single comment by anyone at Canyon County showing expressed hostility towards Mr. Claus's prior service in the JAG or his request for additional years of service toward compensation.  There are no facts to suggest that either Mr. Bazzoli or Mr. James ever expressed any hostility toward adjusting Mr. Claus's years of service, or toward his prior JAG service.  To the contrary, Mr. James's father served in the military and the only conversation he can recall regarding military service was one where he expressed admiration toward Mr. Claus for his prior service.  1-ER-10 n.5; 1-ER-60; 6-ER-1263; 6-ER-1274.

The workplace acts that Mr. Claus cites in an effort to establish an inferential chain are "facially unrelated" to Mr. Claus's military service or his termination.  1-ER-14.  Mentions of Mr. Claus's fourteen years as an attorney, his assignment to the child protection docket, his allegations of being singled out for minor offenses, and his conclusory belief that Messrs. Bazzoli and James did not praise him enough are all entirely unrelated to military service and termination.  *Id.* Further, as the District Court found significant, Canyon County was not building a disciplinary file on Mr. Claus during the time of these alleged discriminatory acts. *Id.*  Instead, between the time of Mr. Claus's protected activity and up until Mr. Claus's misconduct related to the amended witness list, Canyon County was acting

in a manner that sought to coach and keep Mr. Claus employed with Canyon County. 2-ER-249 at ¶ 31; 2-ER-112 at ¶ 31. It was only after Mr. Claus's severe misconduct related to the witness list that Canyon County pursued termination.

The lack of any hostility toward military service members is further supported by Canyon County policies expressly prohibiting discrimination and retaliation based on USERRA. 2-ER-249 at ¶ 32. Specifically, Policy 2.12 states that "no person will be subjected to retaliation or adverse employment action because such person has exercised his or her rights under [USERRA] or county policy." *Id*. The policy goes on to state that "if any employee believes that he or she has been subjected to discrimination in violation of County policy, the employee should immediately contact his/her EO, the PA, or the HRD." *Id*. There is no basis in the record to suggest that any individual in the Public Defender's office outwardly expressed any hostility (or expressed hostility even in some more subtle way) towards military service or the adjustment of Mr. Claus's years of service.

The District Court properly concluded that there was no evidence of Canyon County's hostility toward the military or Mr. Claus's military service and that the alleged "stray remarks" were insufficient, as a matter of law, to restore the "broken inferential chain of discriminatory intent." 1-ER-14.

### 4. Canyon County Did Not Treat Mr. Claus Differently Than Others.

The District Court correctly concluded that there is no evidence Mr. Claus was treated less favorably than others. 1-ER-15. Based on the facts in the record, it concluded that that "the events leading up to Mr. Claus's termination had never happened before at the Canyon County Public Defender's office." *Id.* Disparate treatment of one employee when compared to other employees with similar work records or offenses is the final factor courts consider when determining whether to infer a discriminatory motive. *Leisek*, 278 F.3d at 900. Notably missing from the record in this case is any indication that other public defenders committed improper disclosures of confidential information, but were disciplined less harshly than Mr. Claus. Indeed, neither Mr. Bazzoli nor Mr. James were aware of any other cases comparable to Mr. Claus. Accordingly, there are no facts to show Mr. Claus was treated more harshly than others without a record of military service.

The facts, viewed in a light most favorable to Mr. Claus and stated simply, do not show that his service or his request for additional years of service credit were considered in his termination, and there certainly are no facts to show they were substantial or motivating factors. Therefore, Mr. Claus failed to establish his *prima facie* case and Canyon County respectfully requests that this Court affirm the finding of the District Court that summary judgment is appropriate as to the USERRA discrimination and/or retaliation claim.

25

**B. The District Court Properly Concluded that Canyon County Demonstrated, as a Matter of Law, that Mr. Claus's Termination Was Based on His Own Improper Conduct and Would Have Resulted Regardless of Whether He Served in the Military.**

Alternatively, the District Court concluded that Mr. Claus "would have been terminated even if he had never served in the military." 1-ER-17. The Court's conclusion was proper and a result of Canyon County's uncontroverted proof of its affirmative defense. Mr. Claus's perceived slights and unsubstantiated personal interpretations of situations are not, in and of themselves, facts. Instead, the Court properly looked at the objective evidence – not Mr. Claus's conclusory allegations and personal perspective – and found that no reasonable jury could conclude that Mr. Claus was terminated for any reason other than his misconduct related to the amended witness list. 1-ER-17. Importantly and correctly, the District Court found that the proper inquiry is not whether Messrs. Bazzoli and James were technically correct that Mr. Claus's conduct violated any policies, rules, or statutes, but whether their belief was genuine. *Id.*

When a plaintiff has shown that protected status was a motivating factor, the employer may avoid liability by showing, as an affirmative defense, that the adverse employment action would have been taken regardless of the employee's protected status. *See Leisek*, 278 F.3d at 899. When the employer can show its legitimate reasons, standing alone, would have induced the same adverse action to the employee, then the employer has satisfied its burden. *See Savage*, 856 F.3d at

26

452.

The undisputed facts show that Mr. Claus was terminated for intentionally sharing a witness list in a sealed child protection parental rights matter with a friend unaffiliated with the Canyon County Public Defender's Office. His termination was contemporaneous with this action and the stated reason for his termination, and Canyon County's conduct has at all times remained consistent with this proffered reason. In short, Mr. Claus would have been terminated regardless of protected status and, in fact, was. His termination was wholly tied to his conduct, had nothing to do with his protected status, and would have occurred regardless of his uniformed service, inclusive of any protected activity that flowed from that service.

### 1. Although Mr. Claus Tries to Downplay the Severity of His Actions, Canyon County Genuinely Believed His Conduct Violated County Policies, Court Rules, the Idaho Rules of Professional Conduct, and Possibly Idaho State Law.

The District Court concluded that Canyon County acted in a manner consistent with their belief that Mr. Claus had violated County policies, court rules, the Idaho Rules of Professional Conduct, and possibly Idaho state law. 1-ER-17. To this end, the District Court noted that Mr. Claus does not dispute his conduct occurred nor the steps Messrs. Bazzoli and James undertook to investigate his conduct. 1-ER-16. Nor does he dispute that Messrs. Bazzoli and James subjectively believed that his conduct was a serious violation. 1-ER-16. Instead,

Mr. Claus questions the "legal correctness of the conclusions and alleges pretext." *Id.* Mr. Claus goes a step further to claim that his actions should be commended. *Id.* But, as the District Court noted, these arguments "largely miss the point." *Id.*

The only substantial or motivating factor for Mr. Claus's termination was his intentional disclosure of a witness list in a sealed child protection case to a friend outside of the Canyon County Public Defender's Office. Mr. Claus's conduct was a violation of Canyon County policies, and believed to be a violation of Idaho Rule of Professional Conduct (I.R.P.C.) 1.6 governing Confidentiality of Information and Idaho Court Rules. It also possibly violated Idaho Code § 18-3203 governing when a person knowingly files a false document, and Idaho Court Administrative Rule 32(g)(9)(a) related to the sealed record of Child Protection Act cases. At all times, Canyon County believed that this violation was severe misconduct and acted consistently with such belief. Though Mr. Claus's opening brief references the conclusions of Mr. Claus's expert that Mr. Claus's conduct was permissible within the I.R.P.C., Canyon County's qualified Idaho legal ethics expert, Ms. Jodi Nafzger[2], concluded that Mr. Claus's conduct violated the I.R.P.C. When focused

---

[2] Ms. Jodi Nafzger has nearly a decade of experience as an associate legal professor in Idaho with an academic and research focus on legal ethics and professionalism. Ms. Nafzger also served on the governing board for the Idaho State Bar's Professionalism and Ethics section for eight years.

on the proper inquiry – whether Messrs. Bazzoli and James genuinely believed that Mr. Claus's conduct was a violation – these conflicting analyses by qualified legal experts further demonstrate the reasonableness of Canyon County's belief and actions.

Canyon County believed, and acted consistently with its belief, that Mr. Claus violated various Canyon County policies when he intentionally disclosed confidential information in a child protective proceeding. Mr. Bazzoli determined that Mr. Claus violated Canyon County policies, including 8.03, 8.04, and 8.05. 1-ER-5; 2-ER-243-4 at ¶¶ 9-11. These policies provide expectations for personal performance and behavior, workplace conduct, and prohibited conduct. Mr. Bazzoli had not authorized the disclosure of the confidential information outside of the office. Mr. Claus undoubtedly also violated Canyon County policies 8.03 and 8.04, which prohibit the release of confidential information without express authority.

Mr. Bazzoli also was concerned that the erroneous legal assistant signature on the Certificate of Service constituted false and misleading information filed with the court in violation of Canyon County Policy 8.05 and, potentially, Idaho Code § 18-3203. 1-ER-6; 2-ER-243-4 at ¶¶ 9-11. In fact, the legal assistant, Ms. Taillon, whose name had been signed on the filing was the one who reported the initial concerns about the filing. 2-ER-242 at ¶ 6. As such, Mr. Bazzoli ensured

29

that the trial court was notified that the certificate of service was incorrect.  2-ER-242-3 at ¶ 11.  Expert testimony from an Idaho ethics expert supports that this belief was reasonable.  2-ER-243 at ¶ 9.

Mr. Bazzoli and Mr. James also believed that Mr. Claus's conduct violated I.R.P.C. 1.6 and contacted Idaho State Bar Counsel.  1-ER-5; 1-ER-98; 2-ER-243-4 at ¶ 11.  Rule 1.6(a) provides:

> A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

*See* I.R.P.C. 1.6 (2004).  The information contained in the filing – including the client's name in the otherwise sealed action, and the names, address, phone numbers, and emails of four third-party witnesses – was "confidential information pertaining to the representation" as defined by the I.R.P.C.   1-ER-5; 2-ER-241-2 at ¶¶ 2, 3.   Mr. Claus had not obtained the informed consent of his client to release this information; nor was he impliedly authorized to release such information to persons who were not employed by or retained by the Canyon County Public Defender's Office.  2-ER-243 at ¶¶ 8, 9; 2-ER-105-7 at ¶¶ 8, 9.  Again, the contradictory expert reports from two qualified Idaho legal ethics experts demonstrate the reasonableness of Canyon County's belief.

Mr. Claus's conduct also was believed to have violated the court rules applicable to child protective proceedings, including those related to court records

found at Idaho Court Administrative Rule 32 (g)(9)(a). 2-ER-558. Under rules specific to Child Protective Act proceedings, Ms. Wilson was not authorized and did not have the trial court's permission to have access to the client's witness list, and the personal information therein, in the CPA matter.

At all times, Mr. Bazzoli and Mr. James believed that Mr. Claus's conduct violated Canyon County policies, the I.R.P.C., and other applicable rules and authority. 1-ER-5; 2-ER-243-4 at ¶¶ 9-11; 2-ER-106-8 at ¶¶ 9-11. Consistent with this genuine belief, Mr. Bazzoli promptly contacted Idaho State Bar Counsel regarding the matter and, after the call, contacted the trial court judge overseeing the sealed case and the Canyon County Prosecutor's office. He also spoke with opposing counsel in the matter. Mr. Claus's breach of his ethical responsibilities, actual and perceived, and various workplace rules was the but-for cause of, and the only substantial or motivating factor for, his termination.

Based on his conduct, as the District Court correctly concluded, Mr. Claus would have been terminated regardless of his prior service in the military or his pay request. 1-ER-15. As noted by the District Court, Mr. Claus "neither disputes what he did, the inquires that followed to understand what took place, nor Messrs. Bazzoli and James's subjective belief that his actions constituted a serious violation of the rules and laws." 1-ER-16.

### 2. It Is Immaterial Whether Mr. Claus's Actions Technically Were Violations of the Idaho Rules of Professional Conduct.

Canyon County believed that Mr. Claus's actions violated policies, the I.R.P.C., and other authority. Plaintiff has argued that his conduct did not technically violate these rules. While inconsistencies between proffered reasons for employment action and resulting actions may be used to infer discriminatory motivation, the court's role is to prevent discrimination, "not act as a super-personnel department that second guesses [an] employer's business judgments." *Hutchins v. DIRECTV Customer Serv., Inc.*, 963 F.Supp.2d 1021, 1031 (D. Idaho 2013) (internal quotation marks and citations omitted); *see also Dewitt v. Sw. Bell Tel. Co.,* 845 F.3d 1299, 1308 (10th Cir. 2017). At all times, Canyon County believed that Mr. Claus's conduct resulted in an ethical breach of the Idaho Rules of Professional Conduct and a violation of Canyon County policies and it would be improper for the court to second-guess that decision here. Canyon County's resulting actions were consistent with this belief and do not create any inference of discriminatory conduct.

While legal experts may debate the significance as to whether Mr. Claus's friend, Ms. Gianuzzi, opened the document – as Mr. Claus intended her to do (*see* 2-ER-242 at ¶ 5) – or whether Ms. Gianuzzi was under Mr. Claus's supervision despite being unaffiliated with Canyon County Public Defender's office (*see generally* 4-ER- 476-699 (Decl. of Jodi Nafzger) and 2-ER-114-211 (Decls. of

32

Mark J. Fucile)), that disagreement does not establish a genuine issue of material fact as to whether discriminatory animus has been shown here. Instead, Mr. Bazzoli's actions in contacting Bar Counsel, notifying opposing counsel, and notifying the trial court judge of the misconduct unequivocally demonstrate that Mr. Bazzoli believed the misconduct was severe.

Notably, it is also not material whether Mr. Claus believed his actions were justified in the representation of his client or whether, as he now contends, he should be commended for his zealous advocacy. Mr. Claus's perception of the validity of his decision has no bearing on Mr. Bazzoli's mindset and reasons for terminating Claus. It is Mr. Bazzoli's actions and mindset that must be evaluated when determining actual or inferred discriminatory motive. There is no fact, as to Mr. Bazzoli's actual conduct surrounding Claus's termination, or the conduct of any other Canyon County employee, that indicates the decision to terminate Claus was related to his military service. Therefore, the District Court properly concluded that, as a matter of law, Canyon County established that Mr. Claus's termination was wholly unrelated to his military service or his pay request based on that service.

**C.** **To the Extent that the *McDonnell Douglas* Burden Shifting Framework Applies, Mr. Claus Has Not Created a Genuine Issue of Material Fact As to Pretext of Discriminatory Animus When Considering All the Facts in a Light Most Favorable to Mr. Claus.**

As a preliminary matter, this Court in *Leisek* – after analyzing the legislative reports of the House and Senate Committees on Veterans' Affairs from 1994 when USERRA was amended – determined that the *McDonnell Douglas* burden shifting framework was <u>not</u> the proper framework for considering retaliation claims under USERRA pursuant to 38 USC §4311(b). *See Leisek*, 278 F.3d at 899, n.2. *See also Huhmann v. Fed. Express Corp.*, 874 F.3d 1102, 1105 (9th Cir. 2017), *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). Accordingly, Canyon County's proof that it would have taken the same action without regard to the employee's protected status serves as an affirmative defense, and conclusively ends the inquiry.

Nevertheless, Mr. Claus asks this Court to apply a *McDonnell Douglas*-like standard to USERRA claims, and allow for an opportunity to show that the employer's stated reason is pretext. To the extent this Court entertains such a request, Mr. Claus seeks to use his own personal perception of facts and incidents to establish a genuine issue of material fact on which a reasonable jury could find Canyon County's actions were pretext for discrimination. In order to do so, Mr. Claus asks this Court to ignore facts unfavorable to his conclusory allegations and subjective beliefs surrounding the various actions. However, the summary

judgment standard requires a court to construe all facts most favorably to the non-moving party, not to ignore unfavorable facts. *See Scott*, 550 U.S. at 380. Further, Mr. Claus's perception and personal senses about a fact or incident do not require a Court to abandon reason when considering summary judgment, particularly when factual explanations exist. *See Nelson*, 83 F.3d at 1081-82.

Mr. Claus cites to various alleged interactions he claims he had over the course of an eight-month period to show that Mr. Bazzoli possessed some sort of discriminatory animus in carrying out Claus's termination. However, without some factual connection to the adverse termination action, these unsubstantiated allegations do not establish a genuine issue of material fact as to whether Claus's military service was a motivating factor for his termination.

### 1. Mr. Claus's Subjective Perception that Mr. Bazzoli was "Highly Dismissive" of His Compensation Adjustment is Refuted by Mr. Bazzoli's Actual Actions.

Mr. Claus's opening brief suggests that Mr. Bazzoli was "highly dismissive" of his request for a compensation adjustment during the December 12, 2017, meeting, and that a jury could infer discriminatory animus to conduct eight months later as a result. Setting aside the temporal issues with this argument briefed elsewhere, Mr. Claus's subjective perception is based on his recollection that Mr. Bazzoli tossed documents on his desk without reviewing them. 5-ER-793 at 88:9-24. But, as disclosed as a part of this litigation, Mr. Bazzoli saved these

documents, and they were produced in discovery. *Id.* When Mr. Claus learned of this, he refuted his own subjective perception by stating, "I suppose at some time he [Bazzoli] looked at them and remembered to save them with the notes as he requested a pay increase from the County." *Id.* Mr. Claus's contradicting conclusory allegations and subjective perceptions do not establish a genuine issue of material fact as to Mr. Bazzoli's mindset regarding Claus's USERRA wage claim, particularly when Mr. Bazzoli himself resolved the compensation issue in the exact manner requested by Mr. Claus within two weeks after the meeting. Even viewing Mr. Claus's conflicting perceptions in a light most favorable to him, the tossing of the document amounts to a stray action insufficient to establish discrimination. *Cf. Merrick,* 892 F.2d at 1438 (stray remarks insufficient to establish discrimination).

### 2. The Fact that Mr. Claus Received Coaching for Correction Does Not Create an Inference of Discrimination.

Mr. Claus argues that after raising his concerns about his years of service calculation, he was counseled on allegedly minor issues. This does not establish military bias and Mr. Claus has failed to show he was treated less favorably than others similarly situated. Mr. Bazzoli supported Mr. James' efforts to coach Mr. Claus's performance deficiencies so as to improve Mr. Claus's performance. 2-ER-249 at ¶ 31; 2-ER-112 at ¶ 31. There was no formal documentation of these deficiencies and no indication that Mr. Bazzoli, Mr. James, nor Canyon County

were building a file to justify terminating Claus in retaliation for raising an issue under USERRA, as Mr. Claus subjectively alleges. 1-ER-14; 2-ER-111-2 at ¶25-26. As the District Court noted, the fact that Canyon County was not "building a file" to justify terminating Mr. Claus further undercuts the eight months of purported discriminatory actions that Mr. Claus alleges and infers. 1-ER-14. There is simply no factual evidence on the record that Mr. Claus was treated differently than any other employee who had similar performance issues. In short, as the District Court concluded, Plaintiff has not created a genuine issue of material fact to show he was treated differently regarding performance deficiencies, nor has he demonstrated that Canyon County's legitimate non-discriminatory reason for termination is pretextual. Instead, Canyon County has conclusively demonstrated that Mr. Claus would have been terminated regardless of his military service, and summary judgment was appropriate. 1-ER-17.

### 3. Mr. Claus's Assignment to the Child Protection Docket Assignment Does Not Create an Inference of Discrimination.

Mr. Claus has attempted to advance arguments that he was unfairly punished by being assigned to handle the Child Protection Act docket. It is unclear how Mr. Claus ties this to his termination, which is the adverse action that is the basis of his complaint. Nevertheless, the District Court likewise determined that this argument fell short of salvaging any inference of discrimination. 1-ER-13. Mr. Bazzoli supported transitioning Mr. Claus to CPA and, without objection from Mr. Claus,

37

effectuated the transition. 5-ER-757-8 at 52:24-53:2. Mr. Bazzoli was aware that Mr. Claus's assigned misdemeanor calendar judge, Judge DeMeyer, was frustrated with Mr. Claus and Mr. Bazzoli believed a transition would give Mr. Claus a fresh start. 2-ER-248 at ¶ 28; 2-ER-112 at ¶ 28. Mr. Bazzoli was also aware of Mr. Claus's past legal experience and interest in child custody matters. 2-ER-248 at ¶ 27. There is no factual record to support the conclusion that a transfer to the Child Protection docket was considered a demotion, that it was an undesirable assignment, or that it is in any way related to Mr. Claus's termination.

Despite his outward agreement to the transition, Mr. Claus now claims he perceived he was being sidelined and that the move was done to inhibit his future career objectives of getting a felony assignment and becoming a judge. However, there are no facts in the record that Mr. Bazzoli believed that transitioning Mr. Claus to CPA was sidelining him, nor any facts in the record that indicate Mr. Bazzoli even knew of Mr. Claus's career objectives of getting a felony assignment and later, a judicial position. The facts on the record are those that show, when offered, Mr. Claus agreed to the transfer, and that the CPA docket was staffed by experienced attorneys in Canyon County. 6-ER-1299. In addition, there are facts to show that Mary Gigray, the person whom Mr. Claus replaced in the CPA docket, was quickly transitioned to a felony docket, definitively disproving Claus's

perception that assignment to the CPA docket at the Canyon County Public Defender's office sidelined or inhibited his future opportunities. 2-ER-110 at ¶ 24.

### 4. There are No Facts in the Record Otherwise Showing Mr. Claus Was Treated Differently Than Others or Treated Unfairly By His Supervisors.

The District Court properly concluded that Mr. Claus's allegations that Mr. James once referred to him as a fourteen-year attorney, that he was singled out for minor offenses, and that he was not praised like other attorneys, even if true, are facially unrelated to Mr. Claus's military service. 1-ER-14. In short, none of these arguments create an inference of military bias or are in any way connected to Mr. Claus's termination. Plaintiff incorrectly asserts that the record shows that Mr. Bazzoli referred to Plaintiff's status as a fourteen-year attorney. However, according to the supporting documents, Bazzoli never made such a statement. *Compare* 2-ER-109-11 at ¶ 24, with 5-ER-818-20 at 113:6-114:16, 114:7-115:7. *See also* 5-ER-1125-6 181:1-182:19. There is no evidence in the record that Bazzoli, who made the decision to terminate Mr. Claus for his severe misconduct, ever referenced Claus's fourteen years as an attorney, and certainly never did so in a pejorative manner. Notably, even if he had done so, fourteen years of service is also entirely consistent with a recognition of all of Mr. Claus's military service, which is consistent with Mr. Claus's years of service request.

To the extent that Mr. James recalled Mr. Claus's years of service, Mr. Claus seeks for the Court to ignore the fact that Mr. Claus's meeting with Mr. James occurred on Mr. James's second day of his job with the County, was his first meeting with an individual employee, and the specifics of his fourteen years of service was raised by Mr. Claus, not Mr. James. 1-ER-4. With this factually relevant context, it is unsurprising that Mr. James recalled Mr. Claus's years of service. There is no evidence or reasonable inference of discriminatory animus related to military service within the comment or Mr. James's recall of Mr. Claus's years of experience. As the District Court noted, to the extent that there is any factual dispute here, it amounts to no more than "'stray remarks' by Messrs. Bazzoli and James … that do not restore the broken inferential chain of discriminatory intent." 1-ER-14.

Mr. Claus also misrepresents his own deposition testimony in indicating he was treated differently for minor offenses that other attorneys allegedly were not singled out on. 2-ER-109-11 at ¶ 24. The record cited in support – 5-ER-803-7 at 98:25-102:3 – does not suggest that Mr. Claus was treated any differently than any other attorney in the office for invading staff members' personal spaces or for failing to check their email inbox. Mr. Claus claims he was singled out for being late to court because emails went around the office indicating other attorneys were late to court. 5-ER-807-8 at 102:4-103:22. However, the record is silent as to

which attorneys were treated more favorably, when this occurred, and exactly how their treatment was better.  Instead, there are no facts to show what discipline or other conversations related to the purported other attorneys, who these other attorneys were, and the facts upon which any such conclusory allegation is based. Given the absence of any factual evidence, the District Court properly concluded that "there is no evidence that Mr. Claus was treated less favorably than others for similar offenses." 1-ER-15.

To the extent Mr. Claus is claiming he did not receive praise when he expected it or that he otherwise felt like he got the cold shoulder from his supervisors, these allegations are likewise unsupported by the record.  However, even if he had shown such facts, that would not establish discriminatory animus sufficient to support his claim.  *See, e.g, Hatheway v. Bd. of Regents of Univ. of Idaho*, 155 Idaho 255, 269, 310 P.3d 315, 329 (2013)  (rejecting constructive discharge and hostile work environment claims because merely "getting the cold shoulder" does not rise to a level to support such a claim).

Finally, Mr. Claus claims that Mr. Bazzoli made a comment to the entire Public Defender office, within Mr. Bazzoli's first couple of weeks on the job, and that he singled out Mr. Claus as the only attorney whose years of service were discounted.  1-ER-13, n.8.  However, as the District Court noted, it is undisputed that Mr. Claus was not the only attorney whose years of service were discounted.

*Id.* Mr. Claus suggests that Mr. Bazzoli's purported statement somehow shows discriminatory animus on the part of Mr. Bazzoli. Even assuming that Mr. Claus correctly recalls Mr. Bazzoli's comment, which Canyon County disputes, it is not a material issue of fact. At most this comment could be used to infer that the compensation system roll-out was a topic of interest for the entire office and that Mr. Bazzoli was still learning about the issue – as there were six other attorneys who also had years discounted. Mr. Bazzoli's alleged mention of Mr. Claus's circumstance, even if true, would not be surprising or noteworthy, given that Mr. Claus had sought out and met with Mr. Bazzoli about the issue prior to Mr. Bazzoli's first day on the job. 1-ER-13 n.7. Further, this alleged and inaccurate comment occurred prior to the December 12, 2017, meeting and Mr. Bazzoli's investigation and affirmative correction of the issue. To infer some sort of discriminatory animus from a factually inaccurate stray comment more than ten months prior to an adverse action belies logic and reason.

>    5.   **The Termination Letter Responded to Allegations Mr. Claus Raised in His Good-Faith Hearing and, in Doing So, Is Not Evidence of Discriminatory Animus.**

In his opening brief, Mr. Claus suggests that Canyon County's explicit statement, in Mr. Claus's final termination letter from August 6, 2018, that it was not terminating Mr. Claus for retaliatory reasons, itself, is proof of discriminatory animus as a "doth protest too much" moment. Appellant's Opening Br., Dkt. 12,

p. 35.  Conveniently, Mr. Claus ignores that the letter is in response to the allegations Mr. Claus raised in his good faith hearing on August 2, 2018, and in his written request for a good faith hearing.  *See* 2-ER-232-6.

To the extent that Mr. Claus's termination letter refutes his allegations of discriminatory conduct, it does so in direct response to the issues he had raised after receiving his notice of termination on July 28, 2017.  To suggest that a reasonable jury could infer discriminatory animus on the part of Canyon County for being responsive further demonstrates the insufficiency of Mr. Claus's claims.  There is no merit to this purported inference when considering <u>all</u> the facts, even in a light most favorable to Mr. Claus.

### 6. Canyon County's Neutrally Applied Compensation System is Not Evidence of Pretext and Discriminatory Animus.

The District Court properly found that compensation system overhaul was not discriminatory and "treated military veterans and non-veterans alike."  1-ER-11.  Further, the Court noted there was no factual basis to infer that Canyon County's adoption of the neutral compensation system demonstrates some sort of discriminatory animus towards military service.  *Id.*  It is undisputed that Canyon County's implementation of the compensation system was neutrally applied to all individuals, regardless of military service.  2-ER-245 at ¶ 18; 2-ER-108 at ¶ 18.  Mr. Claus did not and cannot demonstrate that the implementation of the compensation plan, or the correction initiated by Mr. Bazzoli, was done with or is

43

evidence of discriminatory animus. 2-ER-247 at ¶ 23; 2-ER-109 at ¶ 23. The

compensation plan originally determined years of service for attorneys in the

Public Defender's office based on criminal law experience. Like all attorneys in

the Public Defender's office, Mr. Claus was awarded years of service based on

criminal law experience – regardless of whether that service was military or

otherwise. 2-ER-245 at ¶ 18; 2-ER-108 at ¶ 18. Mr. Claus was given partial credit

for his time in the JAG. 2-ER-259; 3-ER-462. Later, after several attorneys

objected and after Canyon County revised its interpretation, Mr. Claus was

awarded years of service for all years since first bar admission.

The facts show the compensation plan's neutral and uniform application

impacted seven attorneys, inclusive of Mr. Claus, unrelated to military or veteran

status. 2-ER-245 at ¶ 18; 2-ER-108 at ¶ 18. Mr. Claus's personal perception that

his January 2005 – May 2013 service in JAG accounts for the entire seven-year

discount is contradicted by the facts in the record. *Id.* As a matter of law, Plaintiff

cannot show that this action was on the basis of military service or that it was

disparately applied, defeating any argument of discriminatory animus.

As an aside, to the extent that Mr. Claus is attempting to argue

discrimination in violation of USERRA as a result of the compensation plan, that

argument was not properly plead before the District Court and similarly is not

properly before this Court. Count One of Plaintiff's complaint alleges

"Termination in Violation of Uniformed Services Employment and Reemployment Rights Act of 1994." 8-ER-1638. Plaintiff did not allege a pay violation under USERRA nor could he since he was undisputedly given retroactive pay for all years of legal experience since his first bar admission. For purposes of this lawsuit, Plaintiff has only alleged that his termination was in violation of USERRA and any allegation as to the implementation of the compensation system itself improperly seeks to expand the scope of his lawsuit.

### D. The District Court Properly Dismissed Plaintiff's Emotional Distress Claim as Canyon County has Demonstrated, as a Matter Of Law, it Did Not Breach a Legal Duty to Mr. Claus.

For the reasons contained in the District Court's opinion (*see* 1-ER-18), the District Court properly concluded that Canyon County did not breach a legal duty to Mr. Claus, and therefore dismissal of his emotional distress claims was also proper. In Idaho, negligent and intentional infliction of emotional distress claims require a breach of duty owed by a defendant to a plaintiff. *Id.* (citing *Edmondson v. Shearer Lumber Prods.*, 75 P.3d 733, 740 (Idaho 2003) (requiring "wrongful conduct" to state intentional infliction claim); *Frogley v. Meridian Joint Sch. Dist. No. 2*, 314 P.3d 613, 624 (Idaho 2013) (requiring breach of a "legal duty recognized by law" to state negligent infliction claim)). Because dismissal of Mr. Claus's USERRA claim is proper, he cannot demonstrate that Canyon County

breached a legal duty. Therefore, summary judgment and dismissal of Mr. Claus's emotional distress claim remains appropriate.

## CONCLUSION

For the foregoing reasons, summary judgment in favor of Canyon County is proper and the judgment of the District Court should be AFFIRMED.

Date: January 13, 2023

Pam S. Howland, ISB #6177
Benjamin T. Cramer, ISB #9220
Idaho Employment Lawyers, PLLC
1112 W. Main Street, Suite 105
Boise, Idaho 83702
208-901-3912
phowland@idemploymentlawyers.com
bcramer@idemploymentlawyers.com

*/s/ Benjamin T. Cramer*
Benjamin T. Cramer

*Attorneys for Appellee*
Canyon County, Idaho

46

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** _____22-35292_____

The undersigned attorney or self-represented party states the following:

[X] Defendant/Appellee is unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** _/S/ Benjamin T. Cramer_____ **Date** ___January 13, 2023___
*(use "s/[typed name]" to sign electronically filed documents)*

A - 1

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** ____**22-35292**_____

I am the attorney or self-represented party.

**This brief contains** _____**10,747**_____ **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
 [ ] it is a joint brief submitted by separately represented parties;
 [ ] a party or parties are filing a single brief in response to multiple briefs; or
 [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _/S/ Benjamin T. Cramer_____ **Date** _January 13, 2023_____
*(use "s/[typed name]" to sign electronically filed documents)*

B - 1

**ADDENDUM**

**Pertinent Statutes, Regulations, and Rules**

## Addendum – Table of Contents

**Statutes**

Idaho Code § 18-3203 ........................................................................C-3

Uniformed Services Employment and Reemployment Rights Act of 1994

("USERRA") – *Pertinent Sections*

    38 U.S.C. § 4301 ......................................................................C-4

    38 U.S.C. § 4303 ......................................................................C-5

    38 U.S.C. § 4304 ....................................................................C-10

    38 U.S.C. § 4311 ....................................................................C-11

**Rules**

Idaho Court Administrative Rule 32 ................................................C-13

Idaho Rules of Professional Conduct

    Idaho Rules of Professional Conduct 1.6 ................................C-30

**Other Authorities**

Canyon County Personnel Policy 2.12 .............................................C-38

Canyon County Personnel Policy 8.03 .............................................C-39

Canyon County Personnel Policy 8.04 .............................................C-41

Canyon County Personnel Policy 8.05 .............................................C-43

**Idaho Code § 18-3203**

TITLE 18
CRIMES AND PUNISHMENTS

CHAPTER 32
FALSIFYING, MUTILATING OR CONCEALING PUBLIC RECORDS OR
WRITTEN INSTRUMENTS

18-3203. OFFERING FALSE OR FORGED INSTRUMENT FOR RECORD. Every person who knowingly procures or offers any false or forged instrument to be filed, registered or recorded in any public office within this state, which instrument, if genuine, might be filed, or registered, or recorded under any law of this state, or of the United States, is guilty of a felony. History:

[18-3203, added 1972, ch. 336, sec. 1, p. 910.]

https://legislature.idaho.gov/statutesrules/idstat/title18/t18ch32/sect18-3203/
[Retrieved December 12, 2022]

**Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA")**

38 U.S.C. § 4301

**§ 4301. Purposes; sense of Congress**

Effective: October 9, 1996

**(a)** The purposes of this chapter are--

    **(1)** to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;

    **(2)** to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and

    **(3)** to prohibit discrimination against persons because of their service in the uniformed services.

**(b)** It is the sense of Congress that the Federal Government should be a model employer in carrying out the provisions of this chapter.

**CREDIT(S)**

(Added Pub.L. 103-353, § 2(a), Oct. 13, 1994, 108 Stat. 3150; amended Pub.L. 104-275, Title III, § 311(1), Oct. 9, 1996, 110 Stat. 3333.)
38 U.S.C.A. § 4301, 38 USCA § 4301

38 U.S.C.A. § 4303

## § 4303. Definitions

Effective: September 29, 2022

For the purposes of this chapter--

**(1)** The term "Attorney General" means the Attorney General of the United States or any person designated by the Attorney General to carry out a responsibility of the Attorney General under this chapter.

**(2)** The term "benefit", "benefit of employment", or "rights and benefits" means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

**(3)** The term "employee" means any person employed by an employer. Such term includes any person who is a citizen, national, or permanent resident alien of the United States employed in a workplace in a foreign country by an employer that is an entity incorporated or otherwise organized in the United States or that is controlled by an entity organized in the United States, within the meaning of section 4319(c) of this title.

**(4)** **(A)** Except as provided in subparagraphs (B) and (C), the term "employer" means any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including--

> **(i)** a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities;

> **(ii)** the Federal Government;

> **(iii)** a State;

> **(iv)** any successor in interest to a person, institution, organization, or

C - 5

other entity referred to in this subparagraph; and

**(v)** a person, institution, organization, or other entity that has denied initial employment in violation of section 4311.

**(B)** In the case of a National Guard technician employed under section 709 of title 32, the term "employer" means the adjutant general of the State in which the technician is employed.

**(C)** Except as an actual employer of employees, an employee pension benefit plan described in section 3(2) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1002(2)) shall be deemed to be an employer only with respect to the obligation to provide benefits described in section 4318.

**(D)** **(i)** Whether the term "successor in interest" applies with respect to an entity described in subparagraph (A) for purposes of clause (iv) of such subparagraph shall be determined on a case-by-case basis using a multi-factor test that considers the following factors:

> **(I)** Substantial continuity of business operations.
>
> **(II)** Use of the same or similar facilities.
>
> **(III)** Continuity of work force.
>
> **(IV)** Similarity of jobs and working conditions.
>
> **(V)** Similarity of supervisory personnel.
>
> **(VI)** Similarity of machinery, equipment, and production methods.
>
> **(VII)** Similarity of products or services.

**(ii)** The entity's lack of notice or awareness of a potential or pending claim under this chapter at the time of a merger, acquisition, or other form of succession shall not be considered when applying the multi-factor test under clause (i).

**(5)** The term "Federal executive agency" includes the United States Postal Service, the Postal Regulatory Commission, any nonappropriated fund instrumentality of the United States, any Executive agency (as that term is defined in section 105 of title 5) other than an agency referred to in section 2302(a)(2)(C)(ii) of title 5, and

any military department (as that term is defined in section 102 of title 5) with respect to the civilian employees of that department.

**(6)** The term "Federal Government" includes any Federal executive agency, the legislative branch of the United States, and the judicial branch of the United States.

**(7)** The term "health plan" means an insurance policy or contract, medical or hospital service agreement, membership or subscription contract, or other arrangement under which health services for individuals are provided or the expenses of such services are paid.

**(8)** The term "notice" means (with respect to subchapter II) any written or verbal notification of an obligation or intention to perform service in the uniformed services provided to an employer by the employee who will perform such service or by the uniformed service in which such service is to be performed.

**(9)** The term "qualified", with respect to an employment position, means having the ability to perform the essential tasks of the position.

**(10)** The term "reasonable efforts", in the case of actions required of an employer under this chapter, means actions, including training provided by an employer, that do not place an undue hardship on the employer.

**(11)** Notwithstanding section 101, the term "Secretary" means the Secretary of Labor or any person designated by such Secretary to carry out an activity under this chapter.

**(12)** The term "seniority" means longevity in employment together with any benefits of employment which accrue with, or are determined by, longevity in employment.

**(13)** The term "service in the uniformed services" means the performance of duty on a voluntary or involuntary basis in a uniformed service under competent authority and includes active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty, State active duty for a period of 14 days or more, State active duty in response to a national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.), State active duty in response to a major disaster declared by the President under section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5170), a period for which a person is absent from a

position of employment for the purpose of an examination to determine the fitness of the person to perform any such duty, a period for which a System member of the National Urban Search and Rescue Response System is absent from a position of employment due to an appointment into Federal service under section 327 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, a period for which a person is absent from a position of employment due to an appointment into service in the Federal Emergency Management Agency as intermittent personnel under section 306(b)(1) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5149(b)(1)), and a period for which a person is absent from employment for the purpose of performing funeral honors duty as authorized by section 12503 of title 10 or section 115 of title 32.

**(14)** The term "State" means each of the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Virgin Islands, and other territories of the United States (including the agencies and political subdivisions thereof).

**(15)** The term "State active duty" means training or other duty, other than inactive duty, performed by a member of the National Guard of a State—

   **(A)** not under section 502 of title 32 or under title 10;

   **(B)** in service to the Governor of a State; and

   **(C)** for which the member is not entitled to pay from the Federal Government.

**(16)** The term "undue hardship", in the case of actions taken by an employer, means actions requiring significant difficulty or expense, when considered in light of—

   **(A)** the nature and cost of the action needed under this chapter;

   **(B)** the overall financial resources of the facility or facilities involved in the provision of the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

   **(C)** the overall financial resources of the employer; the overall size of the business of an employer with respect to the number of its employees; the number, type, and location of its facilities; and

**(D)** the type of operation or operations of the employer, including the composition, structure, and functions of the work force of such employer; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the employer.

**(17)** The term "uniformed services" means the Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or full-time National Guard duty, the commissioned corps of the Public Health Service, the commissioned officer corps of the National Oceanic and Atmospheric Administration, System members of the National Urban Search and Rescue Response System during a period of appointment into Federal service under section 327 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, intermittent personnel who are appointed into Federal Emergency Management Agency service under section 306(b)(1) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5149(b)(1)) or to train for such service, and any other category of persons designated by the President in time of war or national emergency.

## CREDIT(S)

(Added Pub.L. 103-353, § 2(a), Oct. 13, 1994, 108 Stat. 3150; amended Pub.L. 104-275, Title III, § 311(2), Oct. 9, 1996, 110 Stat. 3334; Pub.L. 105-368, Title II, § 212(a), Nov. 11, 1998, 112 Stat. 3331; Pub.L. 106-419, Title III, § 323(a), Nov. 1, 2000, 114 Stat. 1855; Pub.L. 107-14, § 8(a)(11), (b)(2), June 5, 2001, 115 Stat. 35, 36; Pub.L. 109-435, Title VI, § 604(f), Dec. 20, 2006, 120 Stat. 3242; Pub.L. 111-275, Title VII, §§ 701(a), 702(a), Oct. 13, 2010, 124 Stat. 2887; Pub.L. 112-56, Title II, § 251, Nov. 21, 2011, 125 Stat. 729; Pub.L. 114-326, § 2(b)(2), Dec. 16, 2016, 130 Stat. 1972; Pub.L. 116-259, Title II, § 208, Dec. 23, 2020, 134 Stat. 1168; Pub.L. 116-315, Title VII, § 7004, Jan. 5, 2021, 134 Stat. 5058; Pub.L. 117-178, § 3(a), Sept. 29, 2022, 136 Stat. 2110.)

38 U.S.C.A. § 4303, 38 USCA § 4303

38 U.S.C. § 4304

## § 4304. Character of service

A person's entitlement to the benefits of this chapter by reason of the service of such person in one of the uniformed services terminates upon the occurrence of any of the following events:

**(1)** A separation of such person from such uniformed service with a dishonorable or bad conduct discharge.

**(2)** A separation of such person from such uniformed service under other than honorable conditions, as characterized pursuant to regulations prescribed by the Secretary concerned.

**(3)** A dismissal of such person permitted under section 1161(a) of title 10.

**(4)** A dropping of such person from the rolls pursuant to section 1161(b) of title 10.

### CREDIT(S)

(Added Pub.L. 103-353, § 2(a), Oct. 13, 1994, 108 Stat. 3152.)

38 U.S.C. § 4311

## § 4311. Discrimination against persons who serve in the uniformed services and acts of reprisal prohibited

Effective: October 9, 1996

**(a)** A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

**(b)** An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

**(c)** An employer shall be considered to have engaged in actions prohibited—

**(1)** under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service; or

**(2)** under subsection (b), if the person's (A) action to enforce a protection afforded any person under this chapter, (B) testimony or making of a statement in or in connection with any proceeding under this chapter, (C) assistance or other participation in an investigation under this chapter, or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement,

assistance, participation, or exercise of a right.

**(d)** The prohibitions in subsections (a) and (b) shall apply to any position of employment, including a position that is described in section 4312(d)(1)(C) of this title.

## CREDIT(S)

(Added Pub.L. 103-353, § 2(a), Oct. 13, 1994, 108 Stat. 3153; amended Pub.L. 104-275, Title III, § 311(3), Oct. 9, 1996, 110 Stat. 3334.)

38 U.S.C.A. § 4311, 38 USCA § 4311

**Idaho Court Administrative Rule 32**

Rule 32. Records of the judicial department--Examination and copying--
Exemption from and limitations on disclosure

Effective: July 1, 2020

(a) Statement of policy. This rule is adopted pursuant to the Supreme Court's
authority to control access to court records, as recognized in the Idaho Public
Records Act, I.C. § 74-104. The public has a right to access the judicial
department's declarations of law and public policy, and to access the records of all
proceedings open to the public. This rule provides for access in a manner that:

    (1) Promotes accessibility to court records;
    (2) Supports the role of the judiciary;
    (3) Promotes governmental accountability;
    (4) Contributes to public safety;
    (5) Minimizes the risk of injury to Individuals;
    (6) Protects individual privacy rights and Interests;
    (7) Protects proprietary business information;
    (8) Minimizes reluctance to use the court system;
    (9) Makes the most effective use of court and clerk of court staff;
    (10) Provides excellent customer service; and
    (11) Avoids unduly burdening the ongoing business of the judiciary.

In the event of any conflict this rule shall prevail over any other rule on the issue of
access to judicial records.

(b) Definitions. As used in this Rule:

    (1) "Custodian" means the person defined in paragraph (j)(2) of this Rule.
    (2) "Custodian judge" means the Justice, Judge or Magistrate defined in
    paragraph (j)(3) of this Rule.
    (3) "Personnel" means justices, judges, magistrates, trial court
    administrators, clerks of the district court and staff of a court.
    (4) "Court record" includes:

(A) Any document, information or other thing that is filed, docketed, or lodged by a court or clerk of court in connection with a judicial proceeding;

(B) Any index, calendar, docket, register of actions, official record of the proceedings, order, decree, judgment, minute, and any information in an automated case management system created by or prepared by the court or clerk of court that is related to a judicial proceeding, including existing case management system reports

(C) Any writing, as defined in I.C. § 74-101, containing information relating to the conduct or administration of the public's business, prepared, owned, used or retained by the judicial branch, including the courts, the Administrative Office of the Courts, and the Judicial Council; by the Idaho State Bar; by the Idaho Bar Commission; or by the District Magistrates Commissions.

(5) "Physical record" means a judicial branch record, including a court record, that exists in physical form, irrespective of whether it also exists in electronic form.

(6) "Electronic form" means a court record that exists as:

(A) Electronic representations of text or graphic documents;

(B) An electronic image, including a video image, of a document, exhibit or other thing;

(C) Data in the fields or files of an electronic database or the case management system; or

(D) An audio or visual recording, analog or digital, of an event or notes in an electronic file from which a transcript of an event can be prepared; irrespective of whether it also exists in physical form.

(7) "Remote access" means the ability whereby a person may electronically search, examine and copy court information maintained in a court record by means of access via the Internet or other publicly available telecommunication mechanism.

(8) "Bulk Distribution" means the distribution of all, or a significant subset of the information in court records in electronic form, as is, and without modification or compilation.

(9) "Case management system" means the court technology program, and other technologies that assist in the efficient management of the courts or that improve access to the courts and court records.

(10) "Compiled Data Information" means information that is derived from the selection, aggregation or reformulation by the court of some of the Information from more than one individual court record.

(11) "Redaction" means that personal data identifiers will be omitted or obscured in the manner specified in Idaho Rule of Electronic Filing Rule and Service 15, Idaho Rule of Civil Procedure 2.6, and Idaho Rule of Family Law Procedure 218.

(c) Applications. This Rule shall apply to all court records existing on or after the date of adoption of this Rule. Provided, this Rule shall not prevent access to records, otherwise exempt from disclosure by the following persons in the following situations:

(1) If approved by the custodian judge, or the custodian in the case of any record in the judicial council, federal, state and local officials or their agent examining a judicial record in the exercise of their official duties and powers; however, requests for numerous records or records from more than one county must be approved by the Chief Justice.

(2) Parties to an action and their attorney examining the court file of the action, unless restricted by order of the court, except as limited in paragraphs (g) (12), (15) and (17)(F). In addition, parties may authorize release of their own court records directly to a third party.

(3) Disclosure by the custodian of statistical information that is not descriptive of identifiable persons.

(4) Employees shall have access to their own personnel files.

(5) Judges, clerks, trial court administrators, or other staff employed by or working under the supervision of the courts who are acting within the scope of their duties.

(6) Guardians ad litem and court visitors in guardianship and conservatorship cases shall have access to the case Information sheet in those cases, unless restricted by order of the court.

(d) Access to Court Records, Examination and Copying. Except as provided in paragraphs (g) and (i), the following are subject to examination, inspection and copying. The Supreme Court may provide such access to these records through terminals at judicial branch facilities or on-line from any remote location over the Internet.

(1) Litigant/party indexes to cases filed with the court;

(2) Listings of new case filings, including the names of the parties;

(3) The chronological case summary of events;

(4) Calendars or dockets of court proceedings, including case numbers and captions, date and time of hearings, and location of hearings;

(5) Minutes, orders, opinions, findings of fact, conclusions of law, and judgments of a court and notices of the clerk of the court;

(6) Transcripts and recordings of all trials and hearings open to the public;

(7) Pleadings, motions, affidavits, responses, memoranda, briefs and other documents filed or lodged in a case file;

(8) Administrative or other records of the clerk, justice, judge, magistrate or staff of the court unless exempt from disclosure by statute, case law, or court rule; and

(9) A court record that has been offered or admitted into evidence in a judicial action or that a court has considered as evidence or relied upon for purposes of deciding a motion; except that, before final disposition by the trial court, access to any exhibit shall be allowed only with the permission of the custodian judge subject to any conditions set by the custodian judge and shall take place under the supervision of the office of the court clerk. After final disposition by the trial court, the custodian judge may set reasonable conditions for access to exhibits admitted or offered. The public shall not have access at any time to items of contraband or items that pose a health or safety hazard; for example, drugs, weapons, child pornography, toxic substances, or bodily fluids, without permission of the custodian judge.

(e) Bulk distribution. Bulk distribution of electronic court data is not allowed. However, at its discretion, the Supreme Court may grant requests for scholarly, journalistic, political, governmental, research, evaluation, or statistical purposes where the identification of specific individuals is ancillary to the request.

(f) Compiled Information. Any member of the public may request copies of existing compiled information that consists solely of information that is not exempt from disclosure. Case management reports and information shall be exempt from disclosure until final approval by the Supreme Court of the advancing justice time standards. In addition, the Supreme Court may compile and provide the information if it determines, in its discretion, that the resources are available to

compile the information and that it is an appropriate use of public resources. The Supreme Court may delegate to its staff the authority to make the initial determination as to whether to provide the compiled information.

Compiled information that includes information to which public access has been restricted may be requested from the Supreme Court by any member of the public. The request shall
> (1) identify what information is sought,
> (2) describe the purpose for requesting the information and explain how the information will benefit the public interest or public education, and
> (3) explain provisions for the secure protection of any information requested to which public access is restricted or prohibited.

The response to the request shall be made by the Supreme Court within ten (10) working days following the date of the request.

(g) Court records exempt from disclosure. Except as provided in paragraph (h) of this rule, court records specified below are exempt from disclosure. Any willful or intentional disclosure or accessing of a sealed or exempt court record, not otherwise authorized under this rule, may be treated as a contempt of court.
> (1) Documents and records to which access is otherwise restricted by state or federal law;
> (2) Pre-trial risk assessments and pre-sentence investigation reports, except as provided in Idaho Criminal Rule 32;
> (3) Affidavits or sworn testimony and records of proceedings in support of the issuance of search or arrest warrant pending the return of the warrant;
> (4) Unreturned search warrants;
> (5) Unreturned arrest warrants, except bench warrants, or summonses in a criminal case, provided that the arrest warrants or summonses may be disclosed by law enforcement agencies at their discretion;
>> (A) An "arrest warrant" is a warrant issue for the arrest and detention of a defendant at the initiation of a criminal action.
>> (B) A "bench warrant is a warrant issued for the arrest and detention of a defendant who has already appeared in a criminal action, and it would include a warrant issued for failure to appear at a hearing or

trial, a warrant issued for violation of the conditions of release or bail, and a warrant issued for a probation violation.

(6) Unless otherwise ordered by the custodian judge, applications made and orders granted for the interception of wire, electronic or oral communications pursuant to Idaho Code § 18-6708, recordings of intercepted communications provided to the court, and reports made to the court regarding such interceptions under Idaho Code § 18-6708(7);

(7) Except as provided by Idaho Criminal Rules or statutes, records of proceedings and the identity of jurors of grand juries;

(8) Except as provided by the Idaho Criminal Rules or Idaho Rules of Civil Procedure, the names of jurors placed in a panel for a trial of an action and the contents of jury qualification forms and jury questionnaires for these jurors, unless ordered to be released by the presiding judge;

(9) Juvenile court records as herein after provided:

(A) All court records of Child Protective Act proceedings.

(B) In Juvenile Corrections Act cases filed before July 1, 2017, all court records of Juvenile Corrections Act proceedings on a petition filed under I.C. § 20-510 pending an admit/deny hearing held pursuant to Rule 6, I.J.R. to permit the parties to request that the court consider, or permit the court to consider on its own motion, closing the records and files. Thereafter the court records shall be open unless the court enters an order exempting them from disclosure. At the admit/deny hearing the court shall determine whether the court records shall remain exempt from disclosure as provided in 1. and 2. below:

1. Court records of Juvenile Corrections Act proceedings brought against a juvenile under the age of fourteen (14), or brought against a juvenile fourteen (14) years or older who is charged with an act that would not be a felony if committed by an adult, shall be exempt from disclosure if the court determines by a written order in each case that the records should be closed to the public.

2. Court records of Juvenile Corrections Act proceedings brought against a juvenile fourteen (14) years or older who is charged with an act which would be a felony if committed by an adult, shall be exempt from disclosure if the court determines upon a written order made in each case that

extraordinary circumstances exist which justify that the records should be confidential. If the juvenile is not found to have committed an act which would be a felony if committed by an adult or the charge is reduced to allege an act which would not constitute a felony if committed by an adult, all existing and future case records and documents shall be exempt from disclosure if the court determines by written order in each case that the court records should be closed to the public.

(C) In Juvenile Corrections Act cases filed on or after July 1, 2017, all court records of Juvenile Corrections Act proceedings on a petition filed under I.C. § 20-510 except as provided in 1, 2, and 3 below:

1. The court may release juvenile court records if the court finds, upon motion by the prosecuting attorney, interested party, or other interested persons, that the public's interest in the right to know outweighs the adverse effect of the release of the records on the juvenile's rehabilitation and competency development. In making this decision, the court may consider the following factors:

a. Age of the juvenile;

b. Seriousness of the offense;

c. Whether the offense deals with persons or property;

d. Prior record of the juvenile;

e. The juvenile's risk to reoffend; and

f. The impact on the victim or victims.

2. The following individuals or entities may inspect juvenile court records without a court order unless otherwise prohibited by law:

a. Probation officers;

b. Law enforcement officers;

c. The Department of Juvenile Corrections;

d. The Department of Correction;

e. The Department of Health and Welfare pursuant to its statutory responsibilities in title 16, chapter 16; title 16, chapter 24; or title 20, chapter 5, Idaho Code.

3. The victim of misconduct is entitled to receive:

          a. The name, address and telephone number of the
juvenile offender involved;

          b. the name of the juvenile offender's parents or
guardians, and their addresses and telephone numbers;

          c. The petition, the decree, and orders of restitution;

          d. Any other information as provided in title 19, chapter
53, Idaho Code.

(D) Notwithstanding any other provision of paragraph (g)(9) of this rule, reports prepared pursuant to I.C. § 20-520(1), and other records and reports described in paragraph (g)(17) of this rule are exempt from disclosure.

(E) Notwithstanding any other provision of paragraph (g)(9) of this rule, the court shall make available upon the written request of a superintendent or an employee of the school district authorized by the board of trustees of the school district, the facts contained in any records of a juvenile maintained under Chapter 5, Title 20, Idaho Code. If a request is made to examine records in courts of multiple districts, it shall be ruled upon by the Chief Justice.

(10) Mental commitment case records; provided, the court may disclose these records when consented to by the person identified or his or her legal guardian, or the parent if the individual is a minor. The court in its discretion may make such records available to the spouse, or the immediate family of the person who is the subject of the proceedings;

(11) A uniform citation (the citation only, not the case type); however courts may share the citation with federal, state and local officials or their agents in the exercise of their official duties and powers.

(12) Adoption records and records of proceedings to terminate the parent and child relationship under Chapter 20 of Title 16, Idaho Code, except that an adopted person or a child whose parental rights were terminated may obtain non-identifying medical information in all cases, and the court may also in its discretion make information from the records available, upon such conditions as the court may impose, to the person requesting the record, if the court finds upon written verification of a medical doctor a compelling medical need for disclosure;

(13) All records of proceedings relating to the consent required for abortion for minors brought pursuant to I.C. 18-609A(1) or (3);

(14) All records of proceedings relating to the judicial authorization of sterilization procedures pursuant to I.C. 39-3901;

(15) Documents filed or lodged with the court in camera;

(16) Protection order petitions and related records, maintained pursuant to either the domestic violence crime prevention act or chapter 79, title 18 of the Idaho Code, except orders of the court;

(17) Records maintained by a court that are gathered at the request or under the auspices of a court (other than records that have been admitted in evidence);

> (A) to determine an individual's need for counseling, rehabilitation, treatment or assistance with personal conflicts;
> (B) to assist in assigning an appropriate disposition in the case, including the ADR screening report and screening reports prepared by Family Court Service Coordinators or their designees;
> (C) to provide the court with a recommendation regarding the custody of minor children;
> (D) to provide a court with a psychological evaluation of an individual;
> (E) to provide annual or other accountings by conservators and guardians, except to interested parties as defined by Idaho law;
> (F) to provide personal or identifying information on individuals for internal court use, including case information sheets filed pursuant to Idaho Rule of Civil Procedure 3(d) or Idaho Rule of Family Law Procedure 201, and victim information/restitution sheets.

(18) A reference list of personal data identifiers or an unredacted copy of a document filed pursuant to Idaho Rule of Electronic Filing and Service 15, Idaho Rule of Civil Procedure 2.6 or Idaho Rule of Family Law Procedure 218; however, courts will share the reference list or unredacted copy with other government agencies as required or allowed by law without court order or application for purposes of the business of those agencies.

(19) All court filings, including attachments, in guardianship or conservatorship proceedings whether temporary or permanent, and in proceedings involving a protective arrangement under I.C. § 15-5-409, and whether for an adult, a minor, or a developmentally disabled person, except to interested persons as defined in section 15-1-201, Idaho Code, guardians ad litem, court visitors, or any monitoring entity as defined by Idaho law, or

any attorney representing any of the foregoing; provided, however, the following shall not be exempt from disclosure:

> (A) the register of actions for the case;
> (B) letters of guardianship and letters of conservatorship, and any supplemental orders, decrees or judgments describing, limiting, or expanding the rights and duties of the guardian or conservator
> (C) any order by the court regarding bond by a conservator, and the conservator's bond;
> (D) any order, decree, or judgment dismissing, concluding, or otherwise disposing of the case.

(20) The records in cases involving child custody, child support, and paternity, except that officers and employees of the Department of Health and Welfare shall be able to examine and copy such records in the exercise of their official duties. Other exceptions to this rule are that the register of actions shall be available to the public, and a redacted copy of any order, decree or judgment issued in the case shall be made available to the public However, no redacted copy of any order, decree or judgment must be prepared until there is a specific request for the document. Provided further that any person may request that the court make other records in the case available for examination and copying. Any individual may make the request by filing a court-provided form. When the court receives such a request, it shall promptly review the records in the case and shall make the records available except for those records or portions of records that allege abuse, abandonment or neglect of a child, or which the court determines would inflict undue embarrassment to or put at risk a person referenced in the record who was a child at the time of the filing of the record, or which are exempt from disclosure under the other provisions of Supreme Court rules.

This subsection (g)(20) shall apply only to records in cases filed on or after July 1, 2012, and to records in cases in which a motion to modify an order, decree or judgment was filed on or after July 1, 2012.

(21) Records of judicial work product or drafts, including all notes, e-mail, memoranda or drafts prepared by a judge or a court-employed attorney, law clerk, legal assistant or secretary;

(22) Personnel records, application for employment and records of employment investigations and hearings, including, but not limited to, information regarding sex, race, marital status, birth date, home address, telephone number, applications, testing and scoring materials, grievances or complaints against an employee, correspondence, and performance evaluations; provided the following are not exempt from disclosure: a public official's public service or employment history, classification, pay grade and step, longevity, gross salary and salary history, status, workplace, employing agency, and any adverse official action taken against an employee as a result of a grievance or complaint (except a private letter of reprimand), and after such action is taken (except when the action is a private letter of reprimand), the record of any investigation and hearing leading to the action

(23) Applications, testing and scoring to be included on a court maintained roster;

(24) Computer programs and related records, including but not limited to technical and user manuals, which the judicial branch has acquired and agreed to maintain on a confidential basis;

(25) Records maintained by the state law library that link a patron's name with materials requested or borrowed in the patron's name with a specific subject about which the patron has requested information or materials;

(26) Allegations of attorney misconduct received by the Idaho State Bar and records of the Idaho State Bar relating to attorney discipline, except where confidentiality is waived under the Idaho Bar Commission Rules;

(27) All records relating to applications for permission to take the Idaho bar examination or for admission to practice as exempted from disclosure in the Idaho Bar Commission Rules;

(28) All records and records of proceedings, except the identity of applicants for appointment to judicial office, of the Idaho Judicial Council or any District Magistrates Commission pertaining to the appointment, performance, removal, disability, retirement or disciplining of judges or justices. Provided, however, that the record of a disciplinary proceeding filed by the Judicial Council in the Supreme Court loses its confidential character upon filing;

(h) Permissive Release of Judicial Decision in Exempted Categories. Records of courts' determinations in proceedings exempt from disclosure under (g) of this rule

may, by direction of the court issuing the determination, be subject to inspection, examination and copying in a manner that preserves the anonymity of the participants to the proceeding. In particular, the Supreme Court and the Court of Appeals may provide copies of their rulings in appeals from proceedings exempt from disclosure under paragraph (g) by using "John Doe/Jane Doe" designations or other anonymous designations in documents made available for inspection, examination and copying. Further deletions from the decisions may be made if necessary to preserve anonymity.

(i) Other Prohibitions or Limitations on Disclosure and Motions Regarding the Sealing of Records. Physical and electronic records, may be disclosed, or temporarily or permanently sealed or redacted by order of the court on a case-by-case basis.

(1) Any person or the court on its own motion may move to disclose, redact, seal or unseal a part or all of the records in any judicial proceeding. The court shall hold a hearing on the motion after the moving party gives notice of the hearing to all parties to the judicial proceeding and any other interested person, guardian ad litem, court visitor, ward or protected person, personal representative, guardian, or conservator designated by the court. The court may order that the record immediately be redacted or sealed pending the hearing if the court finds that doing so may be necessary to prevent harm to any person or persons. In ruling on whether specific records should be disclosed, redacted or sealed by order of the court, the court shall determine and make a finding of fact as to whether the interest in privacy or public disclosure predominates. If the court redacts or seals records to protect predominating privacy interests, it must fashion the least restrictive exception from disclosure consistent with privacy interests.

(2) Before a court may enter an order redacting or sealing records, it must also make one or more of the following determinations in writing:

(A) That the documents or materials contain highly intimate facts or statements, the publication of which would be highly objectionable to a reasonable person, or

(B) That the documents or materials contain facts or statements that the court finds might be libelous, or

(C) That the documents or materials contain facts or statements, the dissemination or publication of which may compromise the financial

security of, or could reasonably result in economic or financial loss or harm to, a person having an interest in the documents or materials, or compromise the security of personnel, records or public property of or used by the judicial department, or

(D) That the documents or materials contain facts or statements that might threaten or endanger the life or safety of individuals, or

(E) That it is necessary to temporarily seal or redact the documents or materials to preserve the right to a fair trial, or

(F) That the documents contain personal data identifiers that should have been redacted pursuant to Idaho Rule of Electronic Filing and Service 15, Idaho Rule of Civil Procedure 2.6, or Idaho Rule of Family Law Procedure 218 in which case the court shall order that the documents be redacted in a manner consistent with the provisions of that rule.

(3) In applying these rules, the court is referred to the traditional legal concepts in the law of the right to a fair trial, invasion of privacy, defamation, and invasion of proprietary business records as well as common sense respect for shielding highly intimate or financially sensitive material about persons.

(4) When a record is sealed under this rule, it shall not be subject to examination, inspection or copying by the public. When the court issues an order sealing or redacting records, the court shall also inform the Clerk of the District Court of which specific files, documents and case management system records are to be sealed or redacted. When the court issues an order sealing or redacting records for purposes of public disclosure, the original records in the court file shall not be altered in any fashion.

(5) If the court maintains physical files, sealed files shall be marked "sealed" on the outside of the file. The originals of records that have been ordered to be sealed or redacted shall be placed in a manila envelope marked "sealed" with a general description of the records, their filing date and the date they were sealed or redacted. When the court has issued an order redacting a record, a redacted copy, so marked, shall be substituted for the originals in the court file.

(6) If the court maintains electronic files, the clerk shall designate the security group of the sealed or redacted records as sealed thereby limiting

access in accordance with the court's order. A redacted copy, so marked, shall be substituted for the originals in the court file.

(7) An order directing that records be redacted or sealed shall be subject to examination, inspection or copying by the public to the extent that such disclosure does not reveal the information that the court sought to protect in issuing the order. The decision on a motion to redact, seal or unseal records may be reconsidered, altered or amended by the court at any time. When the court issues an order disclosing otherwise exempt records, it shall place appropriate limitations on the dissemination of that information.

(j) Request for Records.

(1) Any person desiring to inspect, examine or copy physical records shall make an oral or written request to the custodian. If the request is oral, the custodian may require a written request. The custodian may request contact information as provided in I.C. § 74-102. A request for public records and delivery of the public records may be made by electronic mail. The request must clearly identify each record requested so that the custodian can locate the record without doing extensive research and continuing request for documents not yet in existence will not be considered. The custodian may provide the requester information to help the requester narrow the scope of the request or to help the requester maker the request more specific when the response to the request is likely to be voluminous.

(2) Custodian Defined. The custodian of judicial public records is designated as follows:

(A) For any record in a case file in the Supreme Court or Court of Appeals, the custodian is the Clerk of the Supreme Court or a deputy clerk designated in writing.

(B) For any record not in a case file in the Supreme Court or Court of Appeals, the custodian is the Administrative Director of the Courts or other person designated in writing by the Chief Justice.

(C) For any record in a case file in a district court or magistrate court, the custodian is the Clerk of the District Court or a deputy clerk designated in writing.

(D) For any record not in a case file in the district court or magistrate court, the custodian is the Trial Court Administrator of the judicial

district, or judge or magistrate designated by the Administrative District Judge.

(E) For any record in the judicial council, the custodian is the Executive Director of the Judicial Council.

(F) For any record in the Idaho State Bar, the custodian is the Executive Director of the Idaho State Bar or other person designated in writing by the Idaho State Bar Commissioners.

(G) For the purposes of the statewide case management system, the statewide case management system data storage, and compiled information, the custodian is the Administrative Director of the Courts or other person designated in writing by the Chief Justice.

(3) Custodian Judge. The custodian judge of a judicial public record is designated as follows:

(A) For any record in the Supreme Court, statewide case management system, or the statewide case management system data storage, the custodian judge is the Chief Justice, or the Vice-Chief Justice in the absence of the Chief Justice.

(B) For any record in the Court of Appeals, the custodian judge is the Chief Judge of the Court of Appeals, or a Judge of the Court of Appeals designated in writing.

(C) For any record in a case file in the district court or magistrate court, the custodian judge is the presiding magistrate or judge of that case, or judge or magistrate designated in writing by the Administrative District Judge.

(D) For any record not in a case file in the district court or magistrate court, the custodian judge is the Administrative District Judge of that judicial district, or other district judge or magistrate designated in writing by the Administrative District Judge.

(E) For any record in the judicial council, the custodian judge is the Chief Justice or the Vice-Chief Justice in the absence of the Chief Justice.

(F) For any record in the Idaho State Bar, the custodian judge is the Administrative District Judge of the Fourth Judicial District of the State of Idaho or a district judge designated in writing by the Administrative District Judge.

(4) Response to Request. The custodian shall respond to a request for examination of public records. Within three (3) working days from receipt of request, the custodian shall disclose the records requested, refer the request to the custodian judge for determination, or give written notice of denial of the request. Provided, if the custodian determines that it will take more than three (3) working days to determine whether the request should be granted, or that a longer period of time is needed to locate or retrieve the requested records, the custodian shall so notify the person making the request within ten (10) working days following the date of the request. If the documents requested are disclosed by the custodian, no other notice need be given by the custodian. The custodian is not under a duty to compile or summarize information contained in records, nor is the custodian obligated to create new records for the requesting party, except as provided herein. The custodian may deny a request for a copy of all or part of a transcript of an administrative or judicial proceeding or other voluminous publication or document when by rule or statute it may be obtained from the preparer of such record after payment of a fee. Efforts should be made to respond promptly to requests for records

(5) Response by Custodian Judge. If a custodian determines that there is a question as to whether records should be disclosed pursuant to a request, or if a request is made for a ruling by a judge after the custodian denies the request, the custodian shall refer the request to the custodian judge for determination. The custodian judge shall make a written determination as to whether the records should be disclosed within ten (10) working days following the request. In the sole discretion of the custodian judge, an informal hearing may be held by the custodian judge on the question of whether the records should be disclosed. The custodian judge shall determine the time and place of the hearing and the notice to be given by the custodian to the person requesting the records and any other interested person. If a hearing is held under this rule, the response to the person requesting the record may be delayed a reasonable time after the conclusion of the hearing.

(6) Cost of Copying Records. The cost to make a paper copy of any record filed in a case with the clerk of the district court shall be determined by the clerk, and shall not exceed the amount specified in I.C. § 31-3201. The cost for any other copying of any record shall be determined by order of the

Supreme Court or the Administrative District Judge in accordance with the provisions of I.C. § 74-102. The costs so determined shall be paid, in advance, by the person requesting the records. Any delay in paying the costs of copying the records shall extend the time for response by the custodian. In the event that a person wishes to have a copy of a court record that can be easily copied to digital media by court personnel, the person making that request shall provide the appropriate media to the court for that purpose.

(7) Proceedings after Denial. If a custodian denies a request for the examination or copying of records, the aggrieved party may file a request for a ruling by the custodian judge. If the custodian judge denies a request for the examination or copying of records, the sole remedy of any aggrieved person shall be to institute proceedings for disclosure in the district court in accordance with I.C. § 74-115.

Credits

[Amended March 31, 2016, effective July 1, 2016; April 12, 2016, effective July 1, 2016; November 14, 2016, effective November 22, 2016; June 30, 2017, effective July 1, 2017; May 14, 2019, effective July 1, 2019. Amended effective June 26, 2019. Amended May 4, 2020, effective July 1, 2020.]

Administrative Rule 32, ID R ADMIN Rule 32

4-ER-644-7

## Rule 1.6. Confidentiality of information

**(a)** A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

**(b)** A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:

(1) to prevent the client from committing a crime, including disclosure of the intention to commit a crime;

(2) to prevent reasonably certain death or substantial bodily harm;

(3) to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime in furtherance of which the client has used the lawyer's services;

(4) to secure legal advice about the lawyer's compliance with these Rules;

(5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of a client;

(6) to comply with other law or a court order; or

(7) to detect and resolve conflicts of interest arising from the lawyer's change of employment or from changes in the composition or ownership of a firm, but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client.

**(c)** A lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client.

### *COMMENTARY*

*[1] This Rule governs the disclosure by a lawyer of information relating to the representation of a client during the lawyer's representation of the client. See Rule 1.18 for the lawyer's duties with respect to information provided to the lawyer by a prospective client, Rule 1.9(c)(2) for the lawyer's duty not to reveal information relating to the lawyer's prior representation of a former client and Rules 1.8(b) and 1.9(c)(1) for the lawyer's duties with respect to the use of such information to the disadvantage of clients and former clients.*

*[2] A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation. See Rule 1.0(e) for the definition of informed consent. This contributes to the trust that is the hallmark of the client-lawyer relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct. Almost without exception, clients come to lawyers in order to determine their rights and what is, in the complex of laws and regulations, deemed to be legal and correct. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.*

*[3] The principle of client-lawyer confidentiality is given effect by related bodies of law: the attorney-client privilege, the work product doctrine and the rule of confidentiality established in professional ethics. The attorney-client privilege and work-product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law. See also Scope.*

*[4] Paragraph (a) prohibits a lawyer from revealing information relating to the representation of a client. This prohibition also applies to disclosures by a lawyer that do not in themselves reveal protected information but could reasonably lead to the discovery of such information by a third person. A lawyer's use of a hypothetical to discuss issues relating to the representation is permissible so long*

*as there is no reasonable likelihood that the listener will be able to ascertain the identity of the client or the situation involved.*

### Authorized Disclosure

*[5] Except to the extent that the client's instructions or special circumstances limit that authority, a lawyer is impliedly authorized to make disclosures about a client when appropriate in carrying out the representation. In some situations, for example, a lawyer may be impliedly authorized to admit a fact that cannot properly be disputed or to make a disclosure that facilitates a satisfactory conclusion to a matter. Lawyers in a firm may, in the course of the firm's practice, disclose to each other information relating to a client of the firm, unless the client has instructed that particular information be confined to specified lawyers.*

### Disclosure Adverse to Client

*[6] Although the public interest is usually best served by a strict rule requiring lawyers to preserve the confidentiality of information relating to the representation of their clients, the confidentiality rule is subject to limited exceptions. Paragraph (b)(1) recognizes an exception for a client's stated intention to commit a crime. Idaho's rule differs from the ABA Model Rule in that a lawyer may reveal the client's stated intention to commit any crime, not just those involving potential death or potential bodily injury. It is also important to note that this is a permissive rule, in that the lawyer may reveal such confidences but is not required to do so.*

*[7] Paragraph (b)(2) recognizes the overriding value of life and physical integrity and permits disclosure reasonably necessary to prevent reasonably certain death or substantial bodily harm. Such harm is reasonably certain to occur if it will be suffered imminently or if there is a present and substantial threat that a person will suffer such harm at a later date if the lawyer fails to take action necessary to eliminate the threat. Thus, a lawyer who knows that a client has accidentally discharged toxic waste into a town's water supply may reveal this information to the authorities if there is a present and substantial risk that a person who drinks the water will contract a life-threatening or debilitating disease and the lawyer's disclosure is necessary to eliminate the threat or reduce the number of victims.*

*[8] Paragraph (b)(3) addresses the situation in which the lawyer does not learn of the client's crime until after it has been consummated. Although the client no longer has the option of preventing disclosure by refraining from the wrongful conduct, there will be situations in which the loss suffered by the affected person can be prevented, rectified or mitigated. In such situations, the lawyer may disclose information relating to the representation to the extent necessary to*

*enable the affected persons to prevent or mitigate reasonably certain losses or to attempt to recoup their losses. Paragraph (b)(3) does not apply when a person who has committed a crime thereafter employs a lawyer for representation concerning that offense.*

*[9] A lawyer's confidentiality obligations do not preclude a lawyer from securing confidential legal advice about the lawyer's personal responsibility to comply with these Rules. In most situations, disclosing information to secure such advice will be impliedly authorized for the lawyer to carry out the representation. Even when the disclosure is not impliedly authorized, paragraph (b)(4) permits such disclosure because of the importance of a lawyer's compliance with the Rules of Professional Conduct.*

*[10] Where a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. The same is true with respect to a claim involving the conduct or representation of a former client. Such a charge can arise in a civil, criminal, disciplinary or other proceeding and can be based on a wrong allegedly committed by the lawyer against the client or on a wrong alleged by a third person, for example, a person claiming to have been defrauded by the lawyer and client acting together. The lawyer's right to respond arises when an assertion of such complicity has been made. Paragraph (b)(5) does not require the lawyer to await the commencement of an action or proceeding that charges such complicity, so that the defense may be established by responding directly to a third party who has made such an assertion. The right to defend also applies, of course, where a proceeding has been commenced.*

*[11] A lawyer entitled to a fee is permitted by paragraph (b)(5) to prove the services rendered in an action to collect it. This aspect of the rule expresses the principle that the beneficiary of a fiduciary relationship may not exploit it to the detriment of the fiduciary.*

*[12] Other law may require that a lawyer disclose information about a client. Whether such a law supersedes Rule 1.6 is a question of law beyond the scope of these Rules. When disclosure of information relating to the representation appears to be required by other law, the lawyer must discuss the matter with the client to the extent required by Rule 1.4. If, however, the other law supersedes this Rule and requires disclosure, paragraph (b)(6) permits the lawyer to make such disclosures as are necessary to comply with the law.*

**Detection of Conflicts of Interest**

C - 33

*[13] Paragraph (b)(7) recognizes that lawyers in different firms may need to disclose limited information to each other to detect and resolve conflicts of interest, such as when a lawyer is considering an association with another firm, two or more firms are considering a merger, or a lawyer is considering the purchase of a law practice. See Rule 1.17, Comment [7]. Under these circumstances, lawyers and law firms are permitted to disclose limited information, but only once substantive discussions regarding the new relationship have occurred. Any such disclosure should ordinarily include no more than the identity of the persons and entities involved in a matter, a brief summary of the general issues involved, and information about whether the matter has terminated. Even this limited information, however, should be disclosed only to the extent reasonably necessary to detect and resolve conflicts of interest that might arise from the possible new relationship. Moreover, the disclosure of any information is prohibited if it would compromise the attorney-client privilege or otherwise prejudice the client (e.g., the fact that a corporate client is seeking advice on a corporate takeover that has not been publicly announced; that a person has consulted a lawyer about the possibility of divorce before the person's intentions are known to the person's spouse; or that a person has consulted a lawyer about a criminal investigation that has not led to a public charge). Under those circumstances, paragraph (a) prohibits disclosure unless the client or former client gives informed consent. A lawyer's fiduciary duty to the lawyer's firm may also govern a lawyer's conduct when exploring an association with another firm and is beyond the scope of these Rules.*

*[14] Any information disclosed pursuant to paragraph (b)(7) may be used or further disclosed only to the extent necessary to detect and resolve conflicts of interest. Paragraph (b)(7) does not restrict the use of information acquired by means independent of any disclosure pursuant to paragraph (b)(7). Paragraph (b)(7) also does not affect the disclosure of information within a law firm when the disclosure is otherwise authorized, see, Comment [5], such as when a lawyer in a firm discloses information to another lawyer in the same firm to detect and resolve conflicts of interest that could arise in connection with undertaking a new representation.*

*[15] A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure. Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law. In the event of an adverse ruling, the lawyer must consult*

*with the client about the possibility of appeal to the extent required by Rule 1.4. Unless review is sought, however, paragraph (b)(6) permits the lawyer to comply with the court's order.*

*[16] Paragraph (b) permits disclosure only to the extent the lawyer reasonably believes the disclosure is necessary to accomplish one of the purposes specified. Where practicable, the lawyer should first seek to persuade the client to take suitable action to obviate the need for disclosure. In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to accomplish the purpose. If the disclosure will be made in connection with a judicial proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.*

*[17] Paragraph (b) permits but does not require the disclosure of information relating to a client's representation to accomplish the purposes specified in paragraphs (b)(1) through (b)(6). In exercising the discretion conferred by this Rule, the lawyer may consider such factors as the nature of the lawyer's relationship with the client and with those who might be injured by the client, the lawyer's own involvement in the transaction and factors that may extenuate the conduct in question. A lawyer's decision not to disclose as permitted by paragraph (b) does not violate this Rule. Disclosure may be required, however, by other Rules. Some Rules require disclosure only if such disclosure would be permitted by paragraph (b). See Rules 1.2(d), 4.1(b), 8.1 and 8.3. Rule 3.3, on the other hand, requires disclosure in some circumstances regardless of whether such disclosure is permitted by this Rule. See Rule 3.3(c).*

### *Withdrawal*

*[18] If the lawyer's services will be used by the client in materially furthering a course of criminal or fraudulent conduct, the lawyer must withdraw, as stated in Rule 1.16(a)(1). After withdrawal the lawyer is required to refrain from making disclosure of the client's confidences, except as otherwise permitted by Rule 1.6. Neither this Rule nor Rule 1.8(b) nor Rule 1.16(d) prevents the lawyer from giving notice of the fact of withdrawal, and the lawyer may also withdraw or disaffirm any opinion, document, affirmation, or the like.*

### *Acting Competently to Preserve Confidentiality*

*[19] Paragraph (c) requires a lawyer to act competently to safeguard information relating to the representation of a client against unauthorized access by third*

*parties and against inadvertent or unauthorized disclosure by the lawyer or other persons who are participating in the representation of the client or who are subject to the lawyer's supervision. See Rules 1.1, 5.1 and 5.3. The unauthorized access to, or the inadvertent or unauthorized disclosure of, information relating to the representation of a client does not constitute a violation of paragraph (c) if the lawyer has made reasonable efforts to prevent the access or disclosure. Factors to be considered in determining the reasonableness of the lawyer's efforts include, but are not limited to, the sensitivity of the information, the likelihood of disclosure if additional safeguards are not employed, the cost of employing additional safeguards, the difficulty of implementing the safeguards, and the extent to which the safeguards adversely affect the lawyer's ability to represent clients (e.g., by making a device or important piece of software excessively difficult to use). A client may require the lawyer to implement special security measures not required by this Rule or may give informed consent to forgo security measures that would otherwise be required by this Rule. Whether a lawyer may be required to take additional steps to safeguard a client's information in order to comply with other law, such as state and federal laws that govern data privacy or that impose notification requirements upon the loss of, or unauthorized access to, electronic information, is beyond the scope of these Rules. For a lawyer's duties when sharing information with nonlawyers outside the lawyer's own firm, see Rule 5.3, Comments [3]-[4].*

*[20] When transmitting a communication that includes information relating to the representation of a client, the lawyer must take reasonable precautions to prevent the information from coming into the hands of unintended recipients. This duty, however, does not require that the lawyer use special security measures if the method of communication affords a reasonable expectation of privacy. Special circumstances, however, may warrant special precautions. Factors to be considered in determining the reasonableness of the lawyer's expectation of confidentiality include the sensitivity of the information and the extent to which the privacy of the communication is protected by law or by a confidentiality agreement. A client may require the lawyer to implement special security measures not required by this Rule or may give informed consent to the use of a means of communication that would otherwise be prohibited by this Rule. Whether a lawyer may be required to take additional steps in order to comply with other law, such as state and federal laws that govern data privacy, is beyond the scope of these Rules.*

### Former Client

*[21] The duty of confidentiality continues after the client-lawyer relationship has terminated. See Rule 1.9(c)(2). See Rule 1.9(c)(1) for the prohibition against using*

*such information to the disadvantage of the former client.*

*Rule 1.6 and Commentary amended 3-17-14 effective 7-1-14)*

4-ER-644-7

**Canyon County Personnel Policy 2.12**

3-ER-310

## 2.12 Uniformed Services Employment and Reemployment Rights Act (USERRA)

Canyon County is committed to protecting the job rights of employees related to military leave. In accordance with federal and state law, it is the County's policy that no employee or prospective employee will be subjected to any form of discrimination on the basis of that person's membership in or obligation to perform service for any of the Uniformed Services of the United States. Specifically, no person will be denied employment, reemployment, promotion or other benefit of employment on the basis of such membership. Furthermore, no person will be subjected to retaliation or adverse employment action because such person has exercised his or her rights under applicable law or County policy. If any employee believes that he or she has been subjected to discrimination in violation of County policy, the employee should immediately contact his/her EO, the PA, or the HRD.

Employees on military leave are eligible for various benefits under this policy. Military leave includes absences by members of the uniformed services, including Reservists and National Guard members, for training, periods of active military service and funeral honors duty, as well as time spent being examined to determine fitness to perform such service.

Employees requesting leave for military duty should contact their supervisor, EO, or Human Resources to request leave as soon as they are aware of the need for leave. For request forms and detailed information on eligibility, employees' rights while on leave and job restoration upon completion of leave contact Human Resources.

3-ER-310

**Canyon County Personnel Policy 8.03**

3-ER-368-9

## 8.03 Personal Performance and Behavior

Each employee of Canyon County is expected to perform and behave in a manner which reflects favorably upon the County and the department where they work. Every employee must recognize that public employees are subject to additional scrutiny in their public and personal lives because the public's business requires the utmost integrity and care. In order to accomplish the goals of Canyon County, each employee is expected to absolutely avoid personal behaviors which would create unfavorable public impressions of the County and its officials. To accomplish this, the following is a representative list of rules which are not all-inclusive that each employee shall follow:

1. Engage in no conduct which violates state ethics laws.

2. Not accept gifts or gratuities in any personal or professional capacity which could create the impression that the giver is seeking favor from the employee.

3. Not serve on any County board or commission which regulates or otherwise affects the official duties or personal interest of the employee in a way that could create advantage for the employee.

4. Not release confidential information without the express authority of the EO or DA.

5. Not engage in any conduct at or away from work which reflects adversely upon the County and its officials.

6. Not engage in conduct while operating a motor vehicle which impairs the ability of the employee to perform job functions. An employee shall not consume any alcoholic beverages during off-duty hours if the employee is required to be on-call.

7. Not engage in workplace or public conduct detrimental to the accomplishment of the goals established by the department for which the employee works.

8. Not engage in a conflict of interest or even the appearance of a conflict of

C - 39

interest.

9. Not engage in criminal conduct of any kind while on duty or off. County employees are expected to behave in a lawful and socially acceptable manner and failure to do so is a violation of the trust placed in such employees by the public and the appointing official. County employees must immediately report any non-routine contact with law enforcement officers to their supervisors.

3-ER-368-9

**Canyon County Personnel Policy 8.04**

3-ER-369-72

**8.04 Workplace Conduct**

Each employee will be expected to perform and behave in the workplace in accordance with the following rules which are not all-inclusive of the conduct expected of Canyon County employees. Each employee shall:

1. Abide by all state, federal or local laws and rules.

2. Adhere to any recognized code of ethics applicable to their respective department.

3. Follow established rules for care and use of County property to assure that the public investment in equipment is protected and that the safety of the public and other workers is maintained.

4. Abide by all departmental rules and directives, whether they are written or oral by the supervisor. The employee must cooperate in any investigation conducted pursuant to Section 10.02. However, no employee shall be required to follow the directive of a supervisor which they know clearly violates the law. In this instance, the employee shall notify the HRD or PA's office to report such violation.

5. Abide by County and department policies concerning the release of information to the public from public records or about public matters. Each employee shall maintain the confidential nature of records which are not open to public scrutiny in accordance with the direction of the EO.

6. Adhere to any established County and department work schedule and any procedures established for departing from the normal work schedule.

7. Report all work time, sick leave and vacation time accurately.

8. Follow departmental procedures regarding the reporting of work hours and the approval which must be given for pay record submittal.

C - 41

9. Follow departmental procedures regarding breaks and lunch periods, including provisions granting supervisors authority to adjust them.

10. Follow all rules and procedures for reporting accidents on the job.

11. Follow all safety rules and procedures in the workplace whether established formally by the department or by outside agencies. Employees are encouraged to suggest ways to make the workplace or work procedures safer.

12. Maintain a current driver's license when necessary to conduct the work for the County. Each employee shall report any state-imposed driving restrictions to an immediate supervisor. Each employee shall notify his/her supervisor if his/her driving abilities are impaired in any way.

13. Perform such obligations as are necessary to carry out the work of the County in an efficient and effective manner at minimal cost and with limited risk to the public and fellow workers.

14. Limit use of personally owned electronic telecommunication devices, including but not limited to: cellular phones, two-way radios, and pagers (audible or vibration alert.) Such devices can be disruptive to both the employee's own work and the work of co-workers. The EO or DA, at his or her discretion, may require employees to turn off these devices while on duty.

15. Not engage in criminal conduct of any kind while on duty or off. County employees are expected to behave in a lawful manner and failure to do so is a violation of the trust placed in such employees by the public and the appointing official.

16. Maintain a positive and professional attitude in the workplace, avoiding hurtful attitudes and actions such as gossip, excessive complaining, sarcasm, and short-temperedness; preserve others' self-confidence and dignity.

17. Work harmoniously with others to get a job done, and respond positively to instructions and procedures.

3-ER-369-72

**Canyon County Personnel Policy 8.04**

3-ER-372-3

## 8.05 Prohibited Workplace Conduct

The following is a representative list of prohibited workplace conduct. Including but not limited to the following, employees of Canyon County shall not:

1. Be present in the workplace under the influence of drugs, alcohol, illegal substances or other substances which would impair the ability of the employee to perform competently or which would threaten the safety or well-being of other workers or the public.

2. Engage in abusive conduct to fellow employees or to the public, or use abusive language in the presence of fellow employees or the public. Abusive language shall include profanity and loud or harassing speech.

3. Sleep while on duty or be absent from the employee's work station when on duty without justifiable cause or permission of a supervisor. Employees shall be attentive to their work at all times.

4. Engage in political activities while on duty. This rule shall not apply to EOs or persons running for elected positions with the EO's written approval. Note that if an employee initiates candidacy against an incumbent EO to whom the employee is subordinate, and there is a reasonable prediction of disruption in that Office in consequence, the employee may be requested to resign or have their employment terminated. The PA must be consulted in all such circumstances. Employees shall enjoy full political rights while not on duty and not using County property.

5. Provide false or misleading information on employment applications, job performance reports, any personnel documents or papers, in reports filed as part of job, or in response to official inquiries.

6. Smoke except in designated smoking areas on County property. This includes the use of E-cigarettes.

7. Violate laws or rules regarding the inappropriate use, alteration, destruction, or removal of any public records required by law to be kept by the County or by other public officials.

8. Violate policies concerning absences from the workplace without proper leave.

9. Use telephone or the computer in the office or workplace in a manner that disrupts the work or workflow.

10. Engage in criminal conduct of any kind while on duty or off. County employees are expected to behave in a lawful manner and failure to do so is a violation of the trust placed in such employees by the public and the appointing official.

11. Violate any rule or procedure established by the appointing official to maintain order and productivity in the workplace.

12. Use sick leave for any purpose other than as allowed by these policies.

13. Commit unlawful harassment as defined by these policies.

14. Violate the current County Electronic Mail and Internet Policy, as adopted and amended.

15. Engage in behavior that is unkind to coworkers, or have an attitude that is disruptive to the office.

3-ER-372-3